**In re Dean R. CALL dba Dean Call Schools of Interior Design and Marketing, Debtor.**

**Bankruptcy No. 2–82–02175.**

United States Bankruptcy Court, S.D. Ohio, E.D.

Jan. 18, 1984.

## ORDER RULING UPON APPLICATION FOR APPOINTMENT OF COUNSEL NUNC PRO TUNC

D. J. KELLEHER, Bankruptcy Judge.

This case is before the Court to consider an application filed October 11, 1983 by the trustee administering this case. The applicant seeks an order of this Court appointing the applicant " * * * as counsel *nunc pro tunc* for the trustee under a general retainer and for such other and further orders as the Court deems necessary or proper in this matter."

This Chapter 7 case commenced June 10, 1982. On June 14 in accordance with 11 U.S.C. § 701 the applicant, "a member of the panel of private trustees established under section 604(f) of title 28," was selected by lot and appointed interim trustee.

He became trustee pursuant to 11 U.S.C. § 702(d).

Review of the file shows that by April 8, 1983 the trustee had reported receipt of $15,288.92, subject to the debtor's claimed exemption of $5,000.00, from the closing of a broker-assisted trustee's sale pursuant to 11 U.S.C. § 363(h) of real estate co-owned by the debtor and another. The trustee had previously filed objection to all exemption claims made by the debtor under 11 U.S.C. § 522(d) and then an objection to part of the debtor's amended exemption claims made under Ohio statutes as required by 11 U.S.C. § 522(b)(1).

The file further discloses that since April 8, 1983 the trustee's administration has consisted of objections, which were not contested, to three proofs of claim, and of a sale of an inoperable copy machine at a price apparently inadequate to pay the auctioneer's and the appraiser's compensation in the sum proposed by the trustee.

Sixteen months after commencing this liquidation administration, the trustee filed the subject application which recites that "administration of the estate has required a great deal of legal expertise * * *;" that "[a]s a result of your applicant's belief that he had filed the necessary application to have himself appointed as counsel for the trustee, your applicant rendered substantial legal services * * *;" and that he "believed that the administration could not have been administered competently if it were not for the legal services rendered by your applicant." The applicant "requests that he be appointed as legal counsel *nunc pro tunc* for the trustee to represent the trustee in all past matters that have previously been administered by the trustee * * * on the basis of a general retainer."

Authority was offered in support of the application by copy of a recent bankruptcy court decision from the Western District of Michigan attached to the application. *In re Bill and Paul's Sporthaus, Inc.*, 31 B.R. 345 (Bkrtcy.Mich.1983). Apparently that bankruptcy court had entered an order purporting to be a *nunc pro tunc* order which was later called into question by an objection to

fees sought by the attorney for whose benefit the order had been granted. In an extended opinion, the bankruptcy judge reiterated the *nunc pro tunc* effect of his order, and overruled the objection to fees that were requested for services performed prior to the actual date of that order, but disallowed part of the fees so claimed.

Factually and procedurally, the Michigan case differs a great deal from this case. The Michigan case was a successful Chapter 11 case in which a plan was confirmed on September 20, 1982. The original 40% plan was amended as a direct result of the objection of the attorney/applicant to provide 100% payments to all unsecured creditors including his clients. As found by the court, prior to September 15, the applicant had represented six unsecured creditors, not being "appointed" by the Creditors' Committee until September 15 after adjournment of the confirmation hearing held the day before. The committee's employment of applicant to represent it was not submitted for the court's approval until about a month later when an application was filed on October 12. Approval was evidenced by order dated October 13. Several months thereafter the applicant applied for allowance of attorney fees at the rate of $100 per hour for 25½ hours of claimed services for the committee, all but one hour of which were performed previous to the October 13 order, including 8½ hours expended before September 15.

The debtor's objection was to fees for all services prior to the Court's actual approval of employment on October 13. The court, over that objection, determined that some fees should be allowed, did not accept applicant's claim that his services for the committee began before the confirmation hearing, found instead that his representation began the day after, and, allowed fees of $1,700.00, disallowing $850.00.

The services claimed worth $850.00 were found not to have been performed for the committee. It follows such must have been performed for one or more of the six unsecured creditors which the applicant represented. Uncertainty as to when the applicant began to represent the Creditors' Committee suggests that he may not have complied with 11 U.S.C. § 1103(b) which required that he cease to represent his six clients, "while employed by [the] committee" a point not discussed in the court's opinion.

The opinion did discuss at length pertinent statutes, certain case precedents and that principle of common law described by the Latin phrase *nunc pro tunc*. All apply to the trustee's application in this Chapter 7 case for authority to employ himself. It is patent that his purpose is to establish a basis in the case, where none exists previous to his application, upon which he may successfully claim, as was done in the Michigan case, attorney fees for legal services pursuant to 11 U.S.C. § 330, which is this court's sole statutory authority for awarding any fees " * * * to a professional person employed under section 327 * * * of this title * * *."

The questions presented by this application are whether a bankruptcy court has discretionary power to authorize such employment retrospectively, and if so, what circumstances will justify the exercise of such power.

11 U.S.C. § 327(a) states in relevant part:

"Except as otherwise provided in this section, the trustee, <u>with the court's approval</u>, may employ one or more attorneys * * * that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title." (Underlining added.)

11 U.S.C. § 327(d) states:

"The court may authorize the trustee to act as attorney or accountant for the estate if such authorization is in the best interest of the estate."

Rule 2014(a) of the Rules of Bankruptcy Procedure, as pertinent, provides:

"An order approving the employment of attorneys * * * or other professional persons pursuant to § 327 * * * shall be made <u>only</u> on application * * * stating

the specific facts showing the necessity for the employment, the name of the person <u>to be employed</u>, the reasons for his selection, the professional services <u>to be rendered</u> * * *." (Underlining added.)

The prospective language of both § 327 and Rule 2014 clearly mandates prior court approval. The use of the word "only" in Rule 2014 would seem to mandate precise compliance and preclude any device to excuse failure to comply with the rule. Nonetheless, several courts have held that while prior approval should be obtained, such approval may perhaps be granted after the fact by *nunc pro tunc* order. *Matter of Triangle Chemicals, Inc.,* 697 F.2d 1280 (5th Cir.1983); *Matter of Laurent Watch Co., Inc.,* 539 F.2d 1231 (9th Cir.1976); *In re Bill and Paul's Sporthaus, Inc.,* 31 B.R. 345 (Bkrtcy.W.D.Mich.1983); *In re King Electric Company,* 19 B.R. 660 (E.D.Virginia 1982); *In re Tom's Variety and Hardware, Inc.,* 30 B.R. 298 (Bkrtcy.S.D.Ohio W.D. 1983). These cases were decided under rules in effect previous to August 1, 1983 when the current rules, including Rule 2014, became effective. However, pertinent language of the earlier rules was essentially the same as Rule 2014.

The court in *Triangle Chemicals* held at page 1289:

"We thus find that neither bankruptcy statute nor rule preclude the bankruptcy judge in the exercise of its sound discretion, and as a court of equity administering equitable principles, from entering an order nunc pro tunc authorizing the employment of an attorney for the debtor in possession, even after the attorney (who *should* have secured prior approval for his retainer) has performed valuable services for the debtor's estate that have increased the common funds available for distribution to the creditors."

The court then limited the extent of its holding as follows:

"In so holding, we decide only the narrow issue that a bankruptcy judge *does* have this discretion, rejecting the present trier's determination that as a matter of law he could never exercise such discretionary power. * * * We only hold that, where through oversight the attorney has neglected to obtain such prior approval but has continued to perform services for the debtor/debtor in possession (many of them as here under the eye of the court itself) the bankruptcy court retains equitable power in the exercise of its sound discretion, under exceptional circumstances, to grant such approval nunc pro tunc, upon proper showing * * *."

A similar guarded pronouncement of a bankruptcy court's power to enter such orders *nunc pro tunc* was earlier made in *Matter of Laurent Watch Co., Inc.,* 539 F.2d 1231 (9th Cir.1976). That Court of Appeals by split decision held that its 1950 decision in *Beecher v. Leavenworth State Bank,* 184 F.2d 498, did not prohibit *nunc pro tunc* appointments under former General Order 44, although that case was widely so understood. The *Laurent* majority at page 1232 emphasized:

"The record in this case discloses that the referee made the determination required by General Order 44 before appellant performed the services for which he seeks compensation. A *nunc pro tunc* order of appointment is not therefore forbidden."

This language in *Laurent* implies that a *nunc pro tunc* order was "not forbidden" only because the bankruptcy court had somehow (not explained) made findings under facts of that case necessary to an order of appointment (although an order was not granted) before the applicant performed any services. Moreover, Circuit Judge Sneed in a strong dissent, stated in *Laurent* at page 1233:

"[T]here is no indication in [*Beecher*] that its refusal to countenance the payment of a fee in the absence of compliance with General Order 44 would yield to a 'nunc pro tunc' approach. 'Nunc pro tunc' is an incantation to permit the correction of yesterday's oversight, not yesteryear's failure on the part of experienced counsel to abide by plain and unambiguous rules."

In the decision of *In re King Electric Company,* 19 B.R. 660 (E.D.Va.1982) cited in

*Triangle Chemicals* with apparent approval, a district judge held that a bankruptcy judge's refusal to order an appointment *nunc pro tunc* was an abuse of discretion because not explained, stating:

"A review of the case law supports appellant's argument that a *nunc pro tunc* order is not forbidden under the facts here presented * * * The bankruptcy judge gave no reason for the denial of the order." Id. at 663.

Seemingly at tension with *Triangle Chemicals* and *King Electric* are long-standing case authorities which hold that a professional person is not entitled to any compensation from a bankruptcy estate for services performed before approval of employment by the court in appropriate prior order.

The Court of Appeals for our circuit in *Gochenour v. Cleveland Terminals Building Co.*, 142 F.2d 991 (6th Cir.1944), *cert. denied* 323 U.S. 767, 65 S.Ct. 120, 89 L.Ed. 614, held:

"Under General Order 44 * * * an attorney for a receiver, trustee or debtor in possession can be appointed only upon order of the court granted upon petition stating specified facts and the employment of the attorney must be for specific purpose, unless the court is satisfied the case is one justifying a retainer * * * This General Order cannot be bypassed by the creditors or their attorneys acting for the debtor without the consent of the court."

In the case of *In re Progress Lektro Shave Corp.*, 117 F.2d 602, 604 (2nd Cir. 1941), [cited with approval in *Gochenour*] the Court of Appeals for the Second Circuit stated: "To recover compensation from the estate for services rendered to the trustee an attorney must receive appointment under General Order 44." The Court of Appeals for the Third Circuit, citing *Progress Lektro Shave* and *Gochenour,* has agreed. *In re Hydrocarbon Chemicals, Inc.*, 411 F.2d 203 (3rd Cir.1969); and see *In re Calpa Products Company*, 411 F.2d 1373 (3rd Cir. 1969).

More recently, these decisions have been followed in several bankruptcy court decisions holding that attorneys, accountants and other professional persons are not entitled to compensation unless employed with approval by the court *prior* to the performance of services. As an example, *In re Garland Corporation,* 8 B.R. 826 (Bkrtcy.D. Mass.1981) states:

"There is one absolute basic condition to any fee application. There must be court authorization prior to the services being rendered for both the person and the services. That counsel cannot be paid for unauthorized services rendered is a hard and fast, albeit somewhat harsh to the ignorant volunteer, rule of bankruptcy law * * *."

*Accord in the same district: In re Rene Press, Inc.,* 23 B.R. 381 (Bkrtcy.D.Mass. 1982), and *In re Morton Shoe Companies, Inc.,* 22 B.R. 449 (Bkrtcy.D.Mass.1982). In the latter case, the Court stated:

"This rule, while it may seem harsh, is an absolute basic condition despite the fact that the services rendered may have been very beneficial or valuable to the estate and performed in good faith." Id. at 450.

Two additional recent cases holding likewise are *In re Johnson,* 21 B.R. 217 (Bkrtcy. D.C.1982), and *In re Lewis,* 30 B.R. 404 (Bkrtcy.E.D.Pa.1983). *See also, Colliers on Bankruptcy,* ¶ 327.02 (1983).

*Gochenour, Progress Lektro Shave* and the other cases just discussed clearly represent strict construction of applicable statutes and rules. Ten years before it decided *Progress Lektro Shave,* the Second Circuit Court of Appeals had held to be without merit a contention that an omitted appointment could be supplied by *nunc pro tunc* order. *In re Rogers-Pyatt Shellac Co.,* 51 F.2d 988, 992 (2nd Cir.1931).

Quotations taken from *Rogers-Pyatt* appear in the opinion in *Matter of Triangle Chemicals, Inc., supra* at page 1286, but carelessly the quotations in both text and footnote are attributed incorrectly to *In re H.L. Stratton, Inc.,* the reported case which precedes *In re Rogers-Pyatt Shellac Co.* in volume 51 of Federal Reporter, Second Se-

ries. Perhaps with equal carelessness, certainly with more impact upon subsequent decisions by lower courts searching for 'respectable authority' to cite and follow, see *In re Tom's Variety & Hardware, Inc.,* 30 B.R. 298, 299 (1983), the opinion in *Triangle Chemicals* invites usurpative retrospective judicial action under the pretense of acting *nunc pro tunc.* The Court seems to brush aside a well reasoned bankruptcy court decision in which the fixed boundaries of the *nunc pro tunc* doctrine were carefully defined and assiduously followed. *In re Mork,* 19 B.R. 947, 949 (Bkrtcy.Minn.1982).

This writer is not aware of any credible legal authority which justifies attributing a broader reach to the *nunc pro tunc* doctrine in Houston from whence came *Triangle Chemicals,* than in Minneapolis which produced *Mork,* or in this district.

The rationale of *Mork* seems to be no different from the law of Ohio which is defined in a leading treatise by these excerpts:

"All courts of record have inherent common-law power, where proper, to enter judgments nunc pro tunc." 32 *O.Jur.2d* 43, *Judges.*

" * * * [T]he power to enter a judgment nunc pro tunc is restricted to placing upon the record evidence of judicial action which has actually been taken. It does not extend beyond the power to make the journal entry speak the truth * * *. It is not made to show what the court might or should have decided, or intended to decide, but what it actually did decide. Thus, the function of a nunc pro tunc entry is not, by a fiction, to antedate the actual performance of an act which never occurred, but is to make the record conform to that which was actually done at the time it was done." 32 *O.Jur.2d* 327, *Judgments.*

The treatise cites authoritative cases which clearly proscribe action which goes beyond judicial power in pretended or misplaced reliance upon the inherent common-law power to act *nunc pro tunc.*

It was held by the Supreme Court of Ohio almost fifty years ago in *National Life Ins.* *Co., v. Kohn,* 133 Ohio St. 111, 11 N.E.2d 1020 (1937) in three syllabi [the law of the case in Ohio] as follows:

"1. Courts possess inherent common-law power to enter *nunc pro tunc* judgments in proper cases.

"2. The power to enter such judgments or orders is restricted ordinarily to the subsequent recording of judicial action previously and actually taken.

"3. When a court exceeds its power in entering a purported *nunc pro tunc* judgment or order, such judgment or order is invalid."

At issue, as pointed out by Chief Justice Weygandt's opinion, was an entry " * * * made on July 11, 1936, [which] purported to be retroactively effective as of March 31, 1936." He wrote:

"The purpose of this retroactive feature could not have been to make the journal speak the truth, because the intervenors did not file their motion until June 16, 1936. Furthermore, it is not claimed that the court took any action whatsoever in this case on March 31, 1936. Thus, it is apparent that the court exceeded its power, and that its pretended entry was invalid." Id., 113–114, 11 N.E.2d 1020.

In 1950 Chief Justice Weygandt again writing for the Supreme Court restated:

"On numerous occasions this court has expressed its adherence to the general rule that courts of record possess inherent common-law power to enter *nunc pro tunc* judgments or orders for the subsequent recording of judicial action previously and actually taken." *State, ex rel. Rogers, v. Rankin,* 154 Ohio St. 23, 26, 93 N.E.2d 281 (1950).

Twenty-five years later the Ohio Supreme Court demonstrated its steadfast adherence to the general rule pronounced by Chief Justice Weygandt by stating:

"A *nunc pro tunc* order seeking to grant an extension after the time has passed, where the trial judge in fact granted no such extension within the time, is beyond the authority of a trial

court. ' * * * [T]he power to make *nunc pro tunc* entries is restricted ordinarily to the subsequent recording of judicial action previously and actually taken. * *.' *National Life Ins. Co. v. Kohn* (1937), 133 Ohio St. 111, 113 [11 N.E.2d 1020]. See *Caprita v. Caprita* (1945), 145 Ohio St. 5 [60 N.E.2d 483]; *State, ex rel. Rogers, v. Rankin* (1950), 154 Ohio St. 23 [93 N.E.2d 281]." *Wampler v. Bach*, 42 Ohio St.2d 237, 241, 327 N.E.2d 764 (1975).

The definitive restriction upon the power to make *nunc pro tunc* entries was precisely enunciated and carefully applied by a distinguished panel of the Court of Appeals of Ohio for Cuyahoga County in a 1980 case as follows:

> "Orders *nunc pro tunc* * * * are available to make the court's record speak the truth; they must be premised upon orders the court has actually made, but has not recorded or has incorrectly recorded. They are unavailable to make the record reflect orders the court should have made or intended to make, but did not." *Torres v. Sears Roebuck & Co.*, 68 Ohio App.2d 87, 427 N.E. 32, 34 (1980).

In a footnote the *Torres* Court observed that "Ohio recognizes a limited exception to the general rule * * *; the exception is available to prevent injustice from delay occasioned by the court itself." (Citing *Estate of Jarrett, infra.*) Id., 34.

The limited exception permitted to the general rule governing exercise of *nunc pro tunc* power is based upon adoption by the Supreme Court of Ohio one hundred years ago of a quotation from a treatise written over three centuries before in 1572 as follows:

> "The court will in general permit a judgment to be entered *nunc pro tunc*, where the signing of it has been delayed by the act of the court." *Re Estate of Jarrett*, 42 Ohio St. 199, 201 (1884).

The *general rule limiting court power to act nunc pro tunc* followed in Ohio has been also recognized in various federal court jurisdictions.

> "Courts possess the inherent power to correct errors in the record evidencing the judgment pronounced by the Court so as to make them speak the truth by actually reflecting that which was in fact done." *Blankenship v. Royal Holding Co.*, 202 F.2d 77, 79 (10th Cir.1953).

> "[T]he equitable powers of a bankruptcy court are necessarily confined within the statutory bounds * * *. [U.S. Sup.Ct. citation.] It is not empowered to allow a claim in equity which is barred by statute.

> "The entry of a nunc pro tunc order does not involve the equity jurisdiction of the court. The Latin phrase is merely descriptive of the inherent power of the court to make its records speak the truth—to record that which was actually done, but omitted to be recorded. It is no warrant for the entry of an order to record that which was omitted to be done." *W.F. Sebel Co. v. Hessee,* 214 F.2d 459, 461–2 (10th Cir.1954).

The quotation above from *Sebel v. Hessee* was later used by the Ninth Circuit Court of Appeals. *A.B.C. Packard, Inc. v. General Motors Corp.*, 275 F.2d 63, 73 (1960). The point made was adopted by citation of *Packard v. General Motors* by a distant district court. *Simmons v. Atlantic Coast Line Railroad Co.,* 235 F.Supp. 325, 330 (E.D.S.C.1964).

Faced with a belated request for a different kind of order in a Chapter 11 case, Bankruptcy Judge White of the Northern District of Ohio succinctly stated:

> "[T]he order sought is not one to record an order made, but never recorded, or one which was incorrectly entered. Debtor seeks to have an order entered, untimely, as if it had been entered timely. Orders Nunc Pro Tunc are not available for that purpose." *In re Ravenna Industries, Inc.,* 20 B.R. 886 (Bkrtcy.Ohio 1982).

It must also be noted that the application offends a controlling rule. Rule 2014(a), *supra*, was promulgated by the United States Supreme Court as a proscription upon all courts acting in bankruptcy cases. The rule mandates that an order of the kind there described " * * * be made only on

application \* \* \*" containing the specific facts there described, which the present application does not contain in sufficient detail.

 Based upon all the foregoing, it is concluded that this court does have inherent jurisdiction in proper cases to take action *nunc pro tunc,* but only within the boundaries prescribed by *National Life Ins. Co. v. Kohn* and *Re Estate of Jarrett, supra.* It is further concluded that the instant application filed October 11, 1983, insofar as it seeks an order of the court which would purport to approve employment of applicant as attorney for the trustee (himself) effective as of any date prior to October 11, 1983, must be denied as requesting the court to grant an unlawful order beyond the court's inherent jurisdiction to act *nunc pro tunc.* Finally, it is concluded that the application filed October 11, 1983, insofar as it seeks an order of the court approving the employment of applicant as attorney for the trustee (himself) prospectively, might be granted now, or *nunc pro tunc* effective October 11, 1983, or any date in the interim between then and now, except that the application does not comply with Rule 2014(a) in that it does not state " \* \* \* the specific facts showing the necessity for the employment [and] the professional services to be rendered [as of October 11, 1983 and thereafter]." Therefore, it is

ORDERED that the Application for Appointment of Counsel Nunc Pro Tunc filed October 11, 1983 be, and it hereby is denied, without prejudice to amendment to state specific facts to support approval of applicant's employment as of October 11, 1983 for services to be thereafter performed.