In the Matter of DIAMOND MORTGAGE CORPORATION, a Michigan corporation, A.J. Obie and Associates, Inc., an unincorporated association, Debtors.

Bankruptcy Nos. 86-04270-B, 86-04271-B.

United States Bankruptcy Court, E.D. Michigan, Southern Division.

Sept. 9, 1987.

**598**

Driggers, Schultz, Herbst & Paterson by Laurence S. Schultz, Troy, Mich., Special Counsel to Trustee.

## MEMORANDUM OPINION

GEORGE BRODY, Chief Judge.

This is a motion for the entry of a *nunc pro tunc* order of employment.

On or around August 24, 1986, a complaint was filed by the Attorney General of the State of Michigan against A.J. Obie and Associates, Inc. and Diamond Mortgage Corporation seeking, *inter alia,* the appointment of a temporary receiver to take possession and marshal all of the assets of the defendants, to ascertain the liabilities of the defendants, to operate the businesses of the defendants, to make monthly reports to the court, and to retain legal counsel, and employees of the defendants in his discretion, and such other professional persons as may be necessary to perform his duties, subject to court approval. Pursuant to that complaint, Neal R. Sutherland was appointed as temporary receiver for Diamond Mortgage Corporation and A.J. Obie and Associates, Inc. by Judge Peter Houk of the State of Michigan Circuit Court of Ingham County on August 25, 1986. On August 25, 1986, Judge Houk appointed the law firm of Driggers, Schultz, Herbst & Paterson to act as attorneys for the receiver. On August 28, 1986, Neal R. Sutherland, as the receiver of the corporations, filed Chapter 11 bankruptcy cases for Diamond Mortgage Corporation and A.J. Obie and Associates, Inc. On September 5, 1986, Neal R. Sutherland was appointed trustee in the Chapter 11 cases, and thereafter the debtors consented to the conversion of the cases to Chapter 7 and the cases were consolidated for joint administration. Mr. Sutherland, after his appointment as trustee, submitted an application to have the firm of Driggers, Schultz, Herbst & Paterson (Driggers, Schultz) and the firm of Schlussel, Lifton, Simon, Rands, Galvin & Jackier (Schlussel, Lifton) appointed as co-counsel to represent him in the consolidated bankruptcy cases. The practice of appointing co-counsel upon general retainer to represent trustees is fraught with difficulty and tends to adversely affect estate administration. In such appointments, it is difficult to monitor the services performed by the different attorneys, very often duplicative services are rendered, and frequently the estate is burdened by unnecessary costs of administration. For these reasons, it has been the practice of the court not to appoint co-counsel but to appoint only one firm or attorney to represent the trustee under a general retainer, and to approve appointment of additional counsel to perform specifically identified services if the need for such appointment is demonstrated. Mr. Sutherland, upon his appointment as trustee in bankruptcy, wanted to retain the firm of Schlussel, Lifton, a firm with recognized bankruptcy expertise which had successfully represented him in prior bankruptcy proceedings. However, he also felt that he had an obligation to the Driggers, Schultz firm because they had represented him during the state court receivership. Mr. Sutherland having practiced in the bankruptcy court for many years was aware of the court's practice of not appointing co-counsel. However, faced with his personal dilemma, he felt compelled to at least submit the application to appoint co-counsel in the hope that it would be approved. The court however, consistent with its long-standing practice, informed Mr. Sutherland that it would not approve the order appointing co-counsel, explaining again why it did approve such orders and making it crystal clear that the application would be approved immediately if only one firm was selected. It was not until September 17, 1986 that an appropriate application was submitted and on that date an order was

entered authorizing the trustee to employ the Schlussel, Lifton firm as attorneys to represent him in the administration of the Diamond Mortgage and A.J. Obie estates. Thereafter, on October 7, 1986, upon application of Mr. Sutherland, the court entered an order authorizing the trustee to employ Driggers, Schultz as special counsel for the trustee to perform certain limited, enumerated services. The services authorized by the order consist of the following:

1) To investigate, and, if necessary to pursue preferential and fraudulent transfers, and other claims or relief against the following insiders:

A) Agents, attorneys and accountants for the Debtors; and

B) Related entities (including, but not limited to, Pleasant View Apartments, Business Air, Flight Airlines, Diamond Financial, Diamond Acceptance Corporation, Diamond Hill Stables, and Greenberg & Associates).

2) To investigate Debtors' relationship with CMI, Ltd., its officers, agents, attorneys and accountants, and, where appropriate, pursue preferential and fraudulent transfers, and other claims for relief against those parties.

On December 17, 1986, the firm of Driggers, Schultz filed an application for interim compensation for services rendered to the trustee as special counsel for the period September 1, 1986 through November 30, 1986 in the amount of $25,491.25. A hearing was held on the application, at which Driggers, Schultz was represented by Mr. Laurence Schultz. The court stated that the firm was not entitled to compensation for any services rendered to the trustee prior to the date of the appointment of Driggers, Schultz as special counsel. Mr. Schultz requested that he be given an opportunity to research the question of whether an attorney may be compensated for services rendered to a trustee without court authorization, and the court granted him the opportunity to do so. Subsequent

to this hearing, the firm amended its application. The amended application seeks $17,158 in compensation for legal services rendered during the period of September 5, 1986 through February 28, 1987.[1] Additionally, Driggers, Schultz filed a motion requesting that the court enter a *nunc pro tunc* order to make retention of the firm's employment retroactive to September 8, 1986.

Prior to the enactment of the Bankruptcy Code as part of the Bankruptcy Reform Act of 1978 (Pub.L.No. 95–598, 92 Stat. 2549, codified as amended at 11 U.S.C. § 101 *et seq.* (1982 & Supp.)), the appointment of attorneys and other professionals was governed initially by General Order 44, which provided in part that "[n]o attorney for a receiver, trustee or debtor-in-possession shall be appointed except upon order of the court." In 1973, the Supreme Court adopted Bankruptcy Rules to supplant the General Orders. Former Bankruptcy Rule 215, governing the employment of attorneys and other professionals, essentially restated General Order 44.

Section 327(a) of the Code (11 U.S.C. § 327(a)(1982)) and Rule 2014(a) of the Bankruptcy Rules (11 U.S.C. Appendix, Bankruptcy Rules, Supp. 1985) adopted to implement the Code, impose the same requirement for employment of attorneys and professionals as did General Order 44 and Bankruptcy Rule 215 of the Bankruptcy Act. Section 327(a) provides as follows:

(a) Except as otherwise provided in this section, the trustee, with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title.

Rule 2014(a), in pertinent part, provides that: "An order approving employment of

---

**1.** Driggers, Schultz has also filed an application for compensation for legal services rendered for the period of August 20, 1986 through September 5, 1986 for Mr. Sutherland during his tenure as temporary state court receiver for A.J. Obie and Associates, Inc. and Diamond Mortgage Corporation, and for legal services rendered subsequently in obtaining approval of the receiver's accounting and discharge.

attorneys, ... or other professional persons pursuant to § 327 ... shall be made *only* on application ..., stating the specific facts showing the necessity for the employment, the name of the person to be employed, the reasons for his selection, the professional services to be rendered...." (emphasis added).

It is clear under the Code, as it was under the Bankruptcy Act, that an attorney for a trustee is not entitled to compensation for services rendered prior to the entry of an order approving his employment. "The overwhelming weight of authority seems to be to the effect that professional services performed for a bankruptcy estate are compensable out of the assets of the estate *only* if such professional assistance has been authorized by the court prior to the services being rendered." *Matter of Mansfield Tire & Rubber Co.,* 65 B.R. 446, 465 (Bankr.N.D.Ohio 1986). "This rule, while it may seem harsh, is an absolute basic condition despite the fact that the services rendered may have been very beneficial or valuable to the estate and performed in good faith." *In re Morton Shoe Companies, Inc.,* 22 B.R. 449, 450 (Bankr. D.Mass.1982). Since the Driggers, Schultz firm was not authorized to represent the trustee until October 7, 1986, it is not entitled to compensation for services it may have rendered to the trustee prior to that date.[2] Counsel representing Driggers, Schultz apparently concedes that an attorney representing a trustee is not entitled to compensation in the absence of an order of employment approved by the bankruptcy court. He also concedes that the firm was not appointed to represent the trustee until October 7, 1986. However, he contends that the trustee required immediate representation, that his firm was requested to perform the services that it did perform and that it would be inequitable for the court to deny the firm compensation for

such services, and therefore the entry of a *nunc pro tunc* order is justified.

The term *"nunc pro tunc"* is a Latin phrase that means "now for then." *Fanelli v. Hensley (Matter of Triangle Chemicals, Inc.),* 697 F.2d 1280, 1285 (5th Cir. 1983). All courts, including the bankruptcy court, have the inherent power to enter *nunc pro tunc* orders. *See In re Call,* 36 B.R. 374, 379 (Bankr.S.D.Ohio 1984). However, the courts are not in agreement as to whether a *nunc pro tunc* order may be entered to make retroactive the appointment of attorneys or other professionals.

Some courts hold that a *nunc pro tunc* order is not appropriate to accomplish this purpose. *In re Call,* 36 B.R. 374; *In re Mork,* 19 B.R. 947, 949 (Bankr.D.Minn. 1982). The rationale for this conclusion is that "the function of a *nunc pro tunc* entry is not, by a fiction, to antedate the actual performance of an act which never occurred, but is to make the record conform to that which was actually done at the time it was done. 32 O.Jur.2d 327, Judgments." *In re Call,* 36 B.R. at 379. As the dissent in *Matter of Laurent Watch Co., Inc.,* 539 F.2d 1231 at 1233 (9th Cir. 1976) states: " 'Nunc pro tunc' is an incantation to permit the correction of yesterday's oversight, not yesteryear's failure on the part of experienced counsel to abide by plain and unambiguous rules."

Other courts, however, hold that, where circumstances justify, equitable power exists to enter *nunc pro tunc* orders not only to record that which was done but omitted to be recorded, but also to record that which was omitted to be done. Some limit the entry of *nunc pro tunc* orders solely to situations where exceptional circumstances are present. *Matter of Triangle Chemicals Inc.,* 697 F.2d 1280 (5th Cir.1983); *see also, Matter of Arkansas Company, Inc.,* 798 F.2d 645 (3d Cir.1986).[3] Some take a

---

**2.** This opinion does not address the question of compensation for services rendered prior to Mr. Sutherland's appointment as trustee on September 5, 1986.

**3.** In *Matter of Triangle Chemicals, Inc.,* 697 F.2d 1280 (5th Cir.1983), an attorney filed a petition for reorganization under Chapter 11 of the

Bankruptcy Code, and after the filing continued to represent the debtor in possession, but an order authorizing his employment was never entered. During the course of the proceedings, the attorney filed an application for compensation for the services he rendered to the debtor in possession. The bankruptcy judge held that he was unauthorized to award fees in the ab-

more liberal approach and hold that retroactive approval of employment is permissible, even though the failure to obtain a timely order prior to rendering services was the result of the applicant's negligence or inadvertence. Illustrative is *Matter of Vlachos*, 61 B.R. 473, 479 (Bankr.S.D.Ohio 1986), wherein the court states:

> Since the matter is within the court's discretion, inadvertence and excusable neglect can constitute a basis for granting such a motion. However, in order to prevail on the request for an order approving appointment *nunc pro tunc:* 1) the application must be one which would have been approved originally by the court, 2) evidence must appear in the record of the case which demonstrates that the court and other interested parties had actual knowledge of the legal services being rendered by the applicant, 3) an application seeking an order *nunc pro tunc* must be filed as soon as the matter is brought to the applicant's attention, and 4) a sustainable objection must not be filed to the applicant's request for attorney fees.

■ This court finds unpersuasive the approach adopted by cases such as *Matter of Vlachos*, 61 B.R. 473; *In re Bill & Paul's Sporthaus, Inc.*, 31 B.R. 345 (Bankr.W.D.Mich.1983); *In re King Electric Company, Inc.*, 19 B.R. 660 (Bankr.E.D.Va.1982); *Hunter Savings Association v. Baggott Law Offices Co., L.P.A.*, 34 B.R. 368 (Bankr.S.D.Ohio 1983) *rev'd on other grounds, In re Georgetown Kettering, Ltd.*, 750 F.2d 536 (6th Cir.1984), that suggests that inadvertence or oversight of counsel constitutes excusable neglect sufficient to justify the entry of a *nunc pro*

*tunc* order. This approach, as the court in *Matter of Arkansas Company, Inc.* points out, "would render meaningless the structure of the Bankruptcy Code and Rules which contain provisions requiring *both* prior approval of employment *and* after the fact approval of compensation." 798 F.2d at 649. The equitable power to enter *nunc pro tunc* orders is not to be used "to encourage any general non-observance of the contemplated preemployment court approval." *Matter of Triangle*, 697 F.2d at 1289. However, the court recognizes that rare and isolated circumstances may justify departure from the strict construction given to the term *"nunc pro tunc"* by cases such as *In re Call* and *In re Mork*, and accordingly adopts the rule enunciated in *Matter of Triangle* and *Matter of Arkansas*, which accommodates the inherent equitable powers of the court and the clear and unambiguous directive of the Code and the Bankruptcy Rules.

■ The question presented, therefore, is whether exceptional circumstances are present which justify the entry of a *nunc pro tunc* order. Counsel contends that it is appropriate to enter a *nunc pro tunc* order because the services counsel performed were performed at the request of the trustee and, furthermore, that the court was aware that he was performing such services. Mr. Sutherland testified that he made no request of counsel to perform any services other than a request for him to attend a designated meeting. This court accepts Mr. Sutherland's testimony that he did not require counsel to perform any legal services for him, other than to attend the one meeting. The asser-

---

sence of an order authorizing the employment of counsel in advance of employment, and also ruled that he had no authority to grant a *nunc pro tunc* order since such an order would circumvent Section 327(a) of the Bankruptcy Code and Rule 2014(a) of the Bankruptcy Rules.
The Court of Appeals reversed and remanded based upon its holding that the Bankruptcy Court had the power to grant a nunc pro tunc order under exceptional circumstances. It remanded the case to determine whether such exceptional circumstances existed. It is relatively clear from the opinion that the court felt that it was not entirely free from doubt at the

time of the filing of the Chapter 11 petition that an attorney for a debtor had to obtain an order approving his employment prior to rendering services to the debtor in possession. This uncertainty, the court apparently felt, constituted exceptional circumstances which justified the granting of a *nunc pro tunc* order.
In *Matter of Arkansas*, the court held there were no exceptional circumstances to justify the failure of an attorney for a creditors' committee to obtain an order authorizing him to represent the creditors' committee prior to performing services for the committee.

602

tion by counsel that the court was aware that Driggers, Schultz was performing services for the trustee is simply not true. The court not only was unaware that counsel was performing legal work for the trustee, but in fact assumed that counsel would not undertake to perform any services until an order was entered appointing him counsel for the trustee. Since the trustee did not request counsel to perform services, and since the court was unaware that counsel was in fact performing any services, the entry of a *nunc pro tunc* order is not justified under the exceptional circumstances rule nor under any other rule, no matter how liberal.

Nor would the entry of a *nunc pro tunc* order retroactively appointing counsel be justified in this case under the exceptional circumstance rule, or any other rule, even if the trustee had requested counsel to perform the services which he did perform. Mr. Sutherland, if he needed immediate representation, could have readily obtained such representation. The fact that he did not do so did not give the Driggers, Schultz firm the right to proceed to render legal services under the assumption that the firm would ultimately be appointed. Mr. Schultz, as well as the Schlussel, Lifton law firm, were on notice that none of the firms were to perform any services for the trustee until the trustee obtained a court order authorizing him to retain counsel—whether the Driggers, Schultz firm, the Schlussel, Lifton firm, or any other attorney. Under such circumstances, to enter an order that would enable Driggers, Schultz to be compensated for services which the firm knew it was not authorized to perform would read Section 327(a) out of the Code and Rule 2014(a) out of the Bankruptcy Rules.

An order consistent with this opinion will be issued by the court.