**In re PICA SYSTEMS, INC., a Michigan corporation, Debtor.**

**Jerome D. FRANK and James T. Ellis, Appellants,**

**v.**

**PICA SYSTEMS, INC. and United States Trustee, Appellees.**

**Nos. 89–00228, 90–72102.**

United States District Court, E.D. Michigan, S.D.

Jan. 8, 1991.

As Corrected Jan. 10, 1991.

Jerome Frank, James Ellis, Southfield, Mich., pro se.

T.N. Ziedas, U.S. Dept. of Justice, Detroit, Mich., for the U.S. Trustee.

MEMORANDUM AND ORDER

COHN, District Judge.

I.

This is an appeal of an order of the United States Bankruptcy Court denying nunc pro tunc appointment of counsel for debtor and disallowing fees. Appellants are Jerome D. Frank (Frank), currently of counsel to Seyburn, Kahn, Ginn, Bess, Howard & Harnisch, P.C. (Seyburn), and James T. Ellis (Ellis), of counsel to Shapack, McCullough & Frank, P.C. (Shapack). Appellees are Pica Systems, Inc., (Pica), debtor, and the United States Trustee (Trustee).

The facts underlying the appeal are as follows. On January 12, 1989, a petition for relief under Chapter 11 of the Bankruptcy Code was filed on behalf of Pica. The list of creditors which accompanied the petition described Shapack as being owed $12,170. On the same date, the United States Trustee's Office (Trustee's Office) was served with two applications for an order authorizing employment of Frank as counsel for the debtor and Ellis as co-counsel, respectively. Accompanying the applications were affidavits of disinterest on behalf of Frank and Ellis. At that time, Frank was a member of Shapack and Ellis was of counsel to Shapack. On January 17, 1989, John Kuhn (Kuhn), senior analyst in the Trustee's Office, telephoned Frank and advised him that the Trustee's Office would not approve his or Ellis's employment unless the affidavits of disinterest were supplemented as to any connections either Frank or Ellis may have had with Pica, its creditors, or any other parties in interest in the case and unless all pre-petition fees were unequivocally waived or subordinated. Frank agreed to appropriately supplement the papers, but no supplemen-

tary documents were ever received by the Trustee's Office.

When Frank subsequently left Shapack and joined Seyburn, he submitted orders substituting counsel and withdrawing counsel in each and every case pending before the bankruptcy court in which Frank was counsel of record, including Pica. On May 3, 1989, an order was entered substituting Frank as counsel for Pica and allowing Shapack to withdraw. The Trustee's Office was not served with a copy of the order of substitution. Neither Frank nor Shapack was ever approved by the bankruptcy court as counsel for Pica.

On May 2, 1990, an order confirming a plan of reorganization of Pica was entered. On May 14, 1990, Frank served the Trustee's Office with a first and final fee application which included both Frank's and Ellis's fees. Upon review of the fee application, the Trustee's Office ascertained that no orders authorizing employment of Frank or Ellis had ever been entered, that their connections to Pica pursuant to BR 2014(a)[1] would have to be revealed, and that the inclusion of Ellis's fees in Frank's fee application was questionable. The Trustee's Office and Frank reached an agreement on the amount of fees subject to entry of an order granting nunc pro tunc approval of the employment of counsel.

On June 18, 1990, the Trustee filed a statement to bring the preceding matters to the attention of the bankruptcy court. On July 3, 1990, Frank filed an application for an order authorizing employment of counsel nunc pro tunc with the bankruptcy court. On July 9, 1990, a hearing was held to determine whether retroactive orders of employment of Frank and Ellis should be entered. At the hearing, Frank indicated to the bankruptcy court that he and Ellis

had performed extensive work for Pica with corresponding benefits to the estate and that inequity would result from a denial of fees. Frank further explained that the supplemental documentation requested by the Trustee's Office was never prepared nor was an order for employment entered because, in the process of moving his offices from Shapack to Seyburn, the matter had escaped Frank's attention, and the deficiency had never been brought to his attention. In answer to the bankruptcy court's inquiry pertaining to the May 1989 order for substitution of counsel, Frank responded that the absence of the original order approving counsel for Pica was never discovered because, at the time Frank was substituting in for counsel, he was making numerous other substitutions as well.

At the hearing, the Trustee took the position that approval of employment nunc pro tunc for Frank and Ellis should not be granted because Frank's reasons for failing to ensure that an order for employment of counsel was entered did not constitute exceptional circumstances. On July 11, 1990, the bankruptcy court entered an order denying Frank's motion for nunc pro tunc appointment and disallowing fees. On July 19, 1990, Frank filed a notice of appeal with the Court challenging the reasoning of the bankruptcy court's written opinion. Frank claims that the bankruptcy court abused its discretion by applying an incorrect legal standard where excusable neglect exists and there is no prejudice to the estate and that but for such neglect, an order employing Frank and Ellis would have been entered automatically.

## II.

The bankruptcy court applied the exceptional circumstances test of *In Re Dia-*

1. Rule 2014. Employment of Professional Persons.

(a) Application for an order of employment. An order approving the employment of attorneys, accountants, appraisers, auctioneers, agents, or other professionals pursuant to § 327 or § 1103 of the Code shall be made only on application of the trustee or committee, stating the specific facts showing the necessity for the employment, the name of the person to be employed, the reasons for the selection, the profes-

sional services to be rendered, any proposed arrangement for compensation, and, to the best of the applicant's knowledge, all of the person's connections with the debtor, creditors, or any other party in interest, their respective attorneys and accountants. The application shall be accompanied by a verified statement of the person to be employed setting forth the person's connections with the debtor, creditors, or any other party in interest, their respective attorneys and accountants.

*mond Mortgage Corp.,* 77 B.R. 597 (E.D. Mich., 1987), and found the circumstances of this case to be neither unusual nor exceptional enough to warrant granting an order for nunc pro tunc approval of employment of counsel or allowance of fees. Although the bankruptcy court stated that it was "sensitive to a claim that a case could 'fall through the cracks,'" it was difficult to understand how Frank's omission could "remain undetected while counsel was providing professional services to [Pica], reviewing and updating the pleadings, and was aware that he had not filed an application for appointment as counsel for [Pica]." The bankruptcy court found that Frank had failed to follow the clear and unambiguous strictures of 11 U.S.C. § 327(a) and BR 2014(a) after receiving notice that his application was deficient and attempting to substitute in when it became apparent that his application would not be approved.

Clearly, the bankruptcy court took a strict view of the obligations of counsel in these kinds of matters. The Court is constrained to agree with the decision of the bankruptcy court and therefore AFFIRMS both the denial of Frank's and Ellis's applications for an order authorizing nunc pro tunc employment of counsel and the disallowance of fees.

### III.

When a bankruptcy court's application of a legal standard is challenged as an abuse of discretion, issues pertaining to statutory construction are reviewed *de novo, In Re Watson,* 78 B.R. 232, 233 (9th Cir. (BAP) 1987), and without special deference to the lower court's interpretation of the law, *In Re New England Fish Co.,* 749 F.2d 1277, 1280 (9th Cir.1984). Of course, the bankruptcy court's findings of fact are accepted unless they are clearly erroneous. BR 8013; *In Re Kimzey,* 761 F.2d 421 (7th Cir.1985). The Bankruptcy Code's requirement of prior court approval for employment of counsel is clear. Under 11 U.S.C. §§ 327(a) [2] and 1107(a) [3], a trustee or debtor in possession may not employ attorneys or other professional persons without the bankruptcy court's prior approval. Section 327(a) also requires that such professionals be "disinterested" persons within the meaning of 11 U.S.C. § 101(13)(A) [4], i.e. not a creditor. Rule 2014(a) outlines the procedure for obtaining court approval. Bankruptcy courts, however, possess the equitable power to authorize nunc pro tunc employment of counsel. *In re Diamond Mortgage,* 77 B.R. 597, 601 (E.D.Mich. 1987). Precedent holds that retroactive approval should not be granted merely because approval of counsel would have been given if timely requested. Such leniency, it is said, would "reward laxity by counsel and encourage circumvention of the statutory requirement." *In re Arkansas Co.,* 798 F.2d 645, 650 (3rd Cir.1986). Requiring a finding of exceptional circumstances in order to grant nunc pro tunc orders "accommodates the inherent equitable powers of the court and the unambiguous directive of the Code and Bankruptcy Rules. *Diamond Mortgage,* 77 B.R. at 601.

When considering an application for nunc pro tunc approval of employment, the bankruptcy court must first determine that

---

**2.** § 327. Employment of Professional Persons.

(a) Except as otherwise provided in this section, the trustee, with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title.

**3.** § 1107. Rights, powers, and duties of debtor in possession.

(a) Subject to any limitations on a trustee serving in a case under this chapter, and to such limitations or conditions as the court prescribes, a debtor in possession shall have all the rights, other than the right to compensation under section 330 of this title, and powers, and shall perform all the functions and duties, except the duties specified in sections 1106(a)(2), (3), and (4) of this title, of a trustee serving in a case under this chapter.

**4.** § 101. Definitions.

In this title—

. . . .

(13) "disinterested person" means person that—

(A) is not a creditor, an equity security holder, or an insider[.]

it would have granted approval pursuant to § 327(a) in that the applicant must be disinterested and not have an adverse interest and that the services rendered were necessary under the circumstances. *Arkansas Co.*, 798 F.2d at 650. The bankruptcy court then considers equitable factors, which include

> whether the applicant or some other person have the repsonsibility [sic] for applying for approval; whether the appellant was under time pressure to begin service without approval; the amount of delay after the applicant learned that the initial approval had not been granted; the extent to which compensation to the applicant will prejudice innocent third parties; and other relevant factors.

*Id.* Finally, in the application of its discretionary power, the bankruptcy court must assess the individual facts and circumstances of each case. *In Re Microwave Prods. of America, Inc.*, 104 B.R. 900, 905 (W.D.Tenn.1989).

## IV.

█ The bankruptcy court did not err when it denied nunc pro tunc appointment of counsel and disallowed fees. First, there was a question as to whether Frank's and Ellis's applications would have been granted prior approval. Kuhn, the senior analyst for the Trustee's Office, had informed Frank of the deficiencies in the applications within days of their receipt by the Trustee's Office. Specifically referring to the listing of Shapack as a creditor of Pica, Kuhn requested a supplementation of Frank's and Ellis's affidavits of disinterest. The bankruptcy court could still have denied appointment to Frank and Ellis because Shapack, as creditor of Pica, was not a "disinterested" person within the meaning of § 101(13)(A). The fact that other courts construe § 101(13)(A) more liberally and have used their discretionary power to appoint firms who were former counsel to the debtor, *Microwave Prods.*, 104 B.R. at 904, is of no moment. In addition, Shapack certainly could have cured the defect by waiver or subordination of any pre-petition fees. Clearly, Frank and Ellis, as members of Shapack were on notice that their application might not be approved.

When Frank substituted as counsel three months after Kuhn's call, he was on notice that the original application had never been approved. Frank argues that, from May 1989 onward, he was performing legal services pursuant to an order of the bankruptcy court. As a single practitioner "of counsel" to Seyburn, Frank could have been approved as counsel for Pica in May of 1989 since he was no longer connected with Shapack at that time. Such a literal reading of the order of substitution, however, would render Ellis's services disapproved because Ellis not only remained an interested person by virtue of his "of counsel" relationship with Shapack, but Shapack itself withdrew from the case. Therefore, if Frank is granted retroactive approval of counsel and fees based on the May 1989 substitution of counsel order, Ellis's retroactive employment and fees cannot be approved. This circumstance put Ellis on notice that his employment was not approved by the bankruptcy court.

Second, both Frank and Ellis bore the responsibility for applying for approval. As a bankruptcy professional of counsel to Shapack, Frank must have been familiar with the requirements of § 327(a) and § 101(13)(A). Once Frank and Ellis submitted separate applications for employment, rather than submitting a single application for Shapack, Ellis bore the responsibility of following through on his own application. In addition, Frank admitted, at the July 1990 bankruptcy hearing, that Ellis's relationship with Shapack was unclear enough to require separate employment of counsel. Therefore, Ellis was on notice in January 1989 that his own appointment might not be granted. Indeed, the May 1989 order for substitution of counsel should have caused Ellis, in particular, to question whether his own application for employment had been granted.

Third, the delay after Frank and Ellis had notice that their applications were not yet approved was in excess of fourteen months. In *In re Federated Dep't Stores, Inc.*, 114 B.R. 501 (Bkrty.S.D.Ohio 1990),

the bankruptcy court granted a nunc pro tunc appointment of an investment broker for a three month period. In *Microwave Prods.*, the court granted 28 days retroactivity. In both *Federated Dep't Stores* and *Microwave Prods.*, the bankruptcy court had made the threshold determination that the professionals were "disinterested" within the meaning of § 101(13)(A) and therefore would have received prior approval. The bankruptcy court in *Arkansas Co.* denied an application for thirteen month retroactivity based on a finding of no exceptional circumstances without making the threshold determination of whether prior approval would have been granted. The applicant in *Arkansas Co.* had attributed its failure to complete the application for approval of counsel only to "inadvertence." Frank's and Ellis's case is similar to *Arkansas Co.* not only in the length of the retroactive period requested but also in the reasons submitted for failure to complete the application. Furthermore, whether Frank and Ellis were disinterested parties within the meaning of § 101(13)(A) has never been determined.

Factors which support nunc pro tunc appointment of Frank and Ellis are, first, that these applicants were under time pressure to begin service without court approval and, second, that compensation of Frank and Ellis would not prejudice third parties. The record of charges submitted by Ellis for approval reveals that he continued his work as counsel to Pica primarily in reference to the Chapter 11 proceedings. The bankruptcy court file shows that Ellis attended a creditors meeting as early as February 3, 1989. Frank's charges do not begin until March 31, 1989, although the bankruptcy files list Frank as counsel to Pica in a January 31, 1989 certificate of service. While the bulk of Ellis's services were rendered between January and August of 1989, the majority of Frank's charges occurred after the substitution of counsel order was entered in May 1989. The bankruptcy court file also reveals a payment by Pica to Ellis of $2,850 on January 12, 1989, the date of the filing of the petition for relief under Chapter 11. Nevertheless, the legal services rendered by both Frank as bankruptcy counsel and Ellis as corporate counsel resulted in the filing of an approved plan of reorganization in May 1990. Third parties presumably benefitted from the plan of reorganization. In addition, the Trustee came to an agreement with Frank and Ellis regarding the amount of the fees and recommended that the bankruptcy court approve the fees subject to nunc pro tunc approval.

Upon review of all the facts and circumstances of the case, the Court finds that the bankruptcy court did not err in applying the "exceptional circumstances" test and denying nunc pro tunc approval of counsel and fees. The exceptional circumstances test appropriately balances the strict requirements of the Bankruptcy Code with an equitable consideration of the facts and circumstances of a particular situation. When experienced legal professionals continue legal services without approval of the bankruptcy court, they run the risk of disapproval of their final application for retroactive appointment and fees. If they are allowed to make up the deficiency in their applications without showing circumstances that are exceptional and something more than simple neglect, which is the case here, the deterrent purposes of § 327(a), *see Arkansas Co.*, 798 F.2d at 648, would be eviscerated and professionals would be encouraged to emulate the laxity displayed by Frank and Ellis in the hope of being saved by equity. This asks too much. Courts, like the Deity, are more inclined to help those who help themselves. *In Re Roco*, 64 B.R. 499, 505 (D.R.I.1986).

SO ORDERED.