In re George & Kornelia **BANHALMI, Debtors.**

**Bankruptcy No. 83 B 7160.**

United States Bankruptcy Court, N.D. Illinois, E.D.

Feb. 22, 1988.

As Amended April 15, 1988.

Max Chill and Steven Radtke, Chicago, Ill., for trustee.

Glen H. Kanwit, Hopkins & Sutter, Chicago, Ill., for Hopkins & Sutter.

Morton H. Cohon, Chicago, Ill., for debtors.

## AMENDED MEMORANDUM OPINION AND ORDER DISALLOWING ADMINISTRATIVE CLAIM

**SUSAN PIERSON DEWITT,**
Bankruptcy Judge.

The issue in this case is whether the attorneys who represented the Debtors in an appeal may be compensated from the estate notwithstanding the fact that they did not obtain an order from the Court authorizing their employment.

### BACKGROUND FACTS

*The Administrative Claim*

The law firm of Hopkins & Sutter has filed an administrative expense claim in the amount of $69,252.67 for the professional services it rendered and the legal expenses it incurred in representing the Debtors in post-judgment proceedings and appeals. On April 26, 1983, the Circuit Court of Cook County entered a $375,000.00 judgment against the Debtors, George and Kornelia Banhalmi, for tortious interference with the expectancy of an inheritance. Shortly thereafter, the Banhalmis retained the law firm of Hopkins & Sutter to represent them in the post-trial proceedings. Approximately six weeks later, the Banhalmis filed a Chapter 11 bankruptcy petition. Even after this filing, Hopkins & Sutter continued to work on the Banhalmis' appeal of the Circuit Court judgment. Hopkins & Sutter now seeks to recover attorneys' fees for the appellate work it performed as a cost of administration in this estate. The Banhalmis' case was converted to a Chapter 7 on May 23, 1985. The trustee objects to the payment of these fees on the grounds that Hopkins & Sutter never obtained the Bankruptcy Court's approval, as required under 11 U.S.C. § 327, to undertake the post-petition appellate work.

*The Circuit Court Judgment*[1]

Vera Nemeth, the plaintiff in the Circuit Court action, and Kornelia Banhalmi, one of the defendants in that case, are stepsisters. In 1975, Vera's Mother, Rose, and her stepfather, Paul, executed identical wills under which the testator's estate was left to the surviving spouse. Each will further provided that if at the time of the testator's death the other spouse were no longer living, the estate would be equally divided between Vera and Kornelia.

Rose died in December of 1975. Under her will, Paul was left with her estate. Paul, then 86, decided to live with Kornelia Banhalmi and her husband George.

In the summer of 1976, Paul executed a new will, again providing that, upon his death, his estate would be divided equally between Vera and Kornelia. Paul died in November, 1978. Vera undertook the task of locating his 1976 will, but was unable to find the original. Vera submitted a copy of the 1976 will to the probate court under the theory that the original had been lost.

Upon submitting the 1976 will, Vera learned that Paul had executed a subsequent will on January 31, 1977. Under that will, Vera would receive a three-unit apartment building that Rose and Paul had owned and 50% of any corporate stock remaining at the time of Paul's death. The balance of Paul's estate was left to Kornelia. In the probate proceedings, however, it was later determined that Paul had destroyed the 1977 will shortly after it was executed, effectively revoking it. Since Paul had never adopted Vera and all prior wills had been revoked, Paul's entire estate passed under the law of intestacy to Kornelia Banhalmi, his only natural born child, as the sole heir.

On November 27, 1979, Vera Nemeth filed an action against the Banhalmis in the Circuit Court of Cook County, Illinois. In the suit, Vera alleged both malicious interference with the expectancy of an inheritance and abuse of a confidential relationship. The trial in the Circuit Court lasted thirteen days.

On April 26, 1983, the court entered judgment in favor of Vera Nemeth and against Kornelia and George Banhalmi. In the

---

**1.** These facts are taken from the opinion entered on April 19, 1984, 125 Ill.App.3d 938, 81 Ill.Dec. 175, 466 N.E.2d 977, by Justice Sullivan in the Illinois Appellate Court Fifth Division No. 83–1624.

thirty-eight page opinion, the court assessed compensatory damages of $300,000.00. The court found that the Banhalmis owed a fiduciary duty to Paul, that they breached that duty, and that their actions were fraudulent while acting in a fiduciary capacity. The court further found the Banhalmis liable for tortious interference with the expectancy of an inheritance, and that the conduct of the Banhalmis was both malicious and conspiratorial. Therefore, the court awarded punitive damages of $75,000.00. On June 7, 1983, the court increased the award of punitive damages on the plaintiff's motion to $79,667.25 to include certain expenses incurred by Nemeth which were not available as costs. The court also assessed costs of $545.96.

*The Illinois Appellate Court Ruling*

The Banhalmis, through their appellate counsel, Hopkins & Sutter, filed an appeal in the Illinois Appellate Court alleging numerous defects in the state court findings. Vera Nemeth filed a cross-appeal. On April 19, 1984, the Illinois Appellate Court affirmed the trial court judgment. The Appellate Court held, however, that Paul's estate should have been valued at $367,572.00 and thus amended the trial court order to reflect modified compensatory damages in the lesser amount of $183,781.00. The appellate court also affirmed the award of $79,667.25 as punitive damages. The Banhalmis' petition for leave to appeal to the Supreme Court was denied.

*The Bankruptcy Filing*

Vera Nemeth began to execute on the Banhalmis' assets after the April 26, 1983, trial court judgment had been entered. On May 3, 1983, the Banhalmis retained Hopkins & Sutter to represent them in post-trial proceedings. On May 6, 1983, the Banhalmis filed a motion to modify or vacate the $375,000.00 judgment. When the Circuit Court denied their motion to modify or vacate the judgment and set the supersedeas bond at $200,000.00, the Banhalmis filed a petition for relief under Chapter 11 of the Bankruptcy Code on June 7, 1983. The schedules filed in the case show unsecured debts of $377,426.00 of which $375,000.00 was the Nemeth judgment. The judgment increased the Debtors' total liabilities to $469,146.00 while total assets were listed on their schedules as $243,216.79. It appears that the only reason the Banhalmis filed the bankruptcy petition was to stall collection of the Nemeth judgment.

The Banhalmis retained Morton H. Cohon to represent them in the bankruptcy proceedings. Hopkins & Sutter did not represent the Banhalmis in their Chapter 11 case. The firm continued to represent them, however, as counsel in the *Nemeth v. Banhalmi* appeal, according to the terms set forth in an engagement letter dated May 9, 1983. The Banhalmis subsequently converted their Chapter 11 proceeding to a Chapter 7 case.

Although Hopkins & Sutter was aware of the Chapter 11 proceeding from its inception, at no time did the law firm request court approval to continue to represent the Banhalmis in the appellate matters. It is for this reason that the Chapter 7 trustee objects to the law firm's administrative claim.

## DISCUSSION

*Employment of Professional Persons Under 11 U.S.C. § 327*

Generally, in order to be compensated from the bankruptcy estate, an attorney representing the debtor-in-possession or trustee must be employed pursuant to an order of the court. 11 U.S.C. § 327; Fed. R.Bankr.P. 2014. Without the requisite court approval, there is no right to compensation. *In re Willamette Timber Systems, Inc.*, 54 B.R. 485 (Bankr.D.Or.1985); *In re The Rene Press, Inc.*, 23 B.R. 381, 383 (Bankr.D.Mass.1982).

■ Hopkins & Sutter argues that 11 U.S.C. § 327 is inapplicable in this case because it had been rendering services to the Banhalmis for approximately one month before they filed their Chapter 11 petition. This argument is without merit. The filing of a Chapter 11 petition creates a new entity, namely, a debtor-in-possession. The Banhalmis, as debtors-in-possession, had new rights and obligations under the

Bankruptcy Code once their petition was filed.

Under 11 U.S.C. § 1107, the "debtor-in-possession shall have all the rights . . . and powers, and shall perform all the functions and duties . . . of a trustee serving in a case" under Chapter 11. Section 1107 makes the language in 11 U.S.C. § 327 regarding the employment of professional persons applicable to the debtor-in-possession.

Section 327 of the Bankruptcy Code provides in pertinent part:

(a) Except as otherwise provided in this section, the trustee, with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title.

11 U.S.C. § 327.

Similarly, Rule 2014(a) of the Bankruptcy Rules states that "An order approving employment of an attorney, . . . or other professional persons pursuant to § 327 . . . shall be made only on application . . ." Fed.R.Bankr.P. 2014. It is clear that the Banhalmis were required to obtain court approval for the continued employment of Hopkins & Sutter. *Matter of Triangle Chemicals, Inc.,* 697 F.2d 1280, 1283–84 (5th Cir.1983).

Many courts have strictly construed these provisions. These courts have denied compensation to attorneys who perform services for a debtor during the pendency of a Chapter 11 proceeding without first obtaining approval of the court. *In re Futuronics Corp.,* 655 F.2d 463 (2d Cir. 1981), *cert. denied,* 455 U.S. 941, 102 S.Ct. 1435, 71 L.Ed.2d 653 (1982); *In re Hargis,* 73 B.R. 622 (Bankr.N.D.Tex.1987); *In re Lewis,* 30 B.R. 404 (Bankr.E.D.Pa.1983); *In re Morton Shoe Companies, Inc.,* 22 B.R. 449 (Bankr.D.Mass.1982). Other courts have taken a more flexible approach and have entered *nunc pro tunc* orders approving the employment of the profession-

als in order to approve their requests for compensation.

### Nunc Pro Tunc Orders

All courts have the inherent power to enter *nunc pro tunc* or retroactive orders. However, since the Latin phrase means "now for then", courts have been divided on whether a *nunc pro tunc* order should be used to approve the employment of professionals. *Matter of Triangle Chemicals, Inc.,* 697 F.2d at 1285–87, *Matter of Diamond Mortgage Corp.,* 77 B.R. 597, 600–01 (Bankr.E.D.Mich.1987). Some courts will enter *nunc pro tunc* orders only to record something that was previously done but not recorded. Thus, without previous approval of the employment of counsel, there is no basis for recording an order *nunc pro tunc. In re Liddell,* 46 B.R. 682–84 (Bankr.E.D.Cal.1985); *In re Mork,* 19 B.R. 947, 949 (Bankr.D.Minn.1982). Other courts will approve the employment of professionals on a retroactive basis, but use the term *"nunc pro tunc"* to record approval of employment which the professional previously failed to obtain. *Matter of Vlachos,* 61 B.R. 473 (Bankr.S.D.Ohio 1986); *In re Bill & Paul's Sporthaus, Inc.,* 31 B.R. 345 (Bankr.W.D.Mich.1983). To enter a *nunc pro tunc* order when the employment of the professional has not previously been approved, however, is to use the term incorrectly. This court will follow instead the Ninth Circuit Bankruptcy Appellate Panel and use the more accurate term "retroactive" order in this context. *In re Crook,* 79 B.R. 475, 477, n. 1 (9th Cir. BAP 1987).

When counsel has not applied for an order approving his employment before he commences work, some courts have held that an order may not be entered retroactively to approve the appointment of attorneys. *In re Liddell,* 46 B.R. 682 (Bankr.E.D.Cal.1985); *In re Call,* 36 B.R. 374 (Bankr.S.D.Ohio 1984); *In re Johnson,* 21 B.R. 217 (Bankr.D.D.C.1982).

Other courts are willing to enter retroactive orders on a liberal basis. These courts will permit retroactive approval of employment of professionals even when the failure to obtain the requisite order is a result

of inadvertence or neglect. *In re Georgetown Kettering, Ltd.*, 750 F.2d 536 (6th Cir.1984); *Matter of Vlachos*, 61 B.R. 473 (Bankr.S.D.Ohio 1986); *In re King Electric Co., Inc.*, 19 B.R. 660 (E.D.Va.1982). This lenient rule has been criticized, however, as rendering "meaningless the structure of the Bankruptcy Code and Rules which contain provisions requiring *both* prior approval of employment *and* after the fact approval of compensation". *Matter of Arkansas Company, Inc.*, 798 F.2d 645, 649 (3d Cir.1986).

The Seventh Circuit has held that the equitable aspects of bankruptcy proceedings permit the court to retroactively approve the employment of debtor's counsel under the proper circumstances. *Stolkin v. Nachman*, 472 F.2d 222 (7th Cir.1973). In *Stolkin*, the court held that the rationale of General Order 44, the predecessor of Bankruptcy Rule 2014, is the protection of creditors. *Id.* at 227.

The *Stolkin* court held that it was proper to award attorney's fees to the debtor's attorney, even though no prior order approving his employment was obtained, in light of the following facts: The bankruptcy was filed under the imminent pressure of foreclosure proceedings; there was no evidence that if the debtor-in-possession had filed a petition in compliance with General Order 44 it would have been subject to any challenge; there was no evidence that the attorney in question represented any interest adverse to the estate or to the debtor-in-possession; the debtor's financial condition clearly necessitated employment of counsel; and every creditor had been paid in full and a substantial amount had been left to the debtor. *Id.* at 226–27. This court follows the spirit of the *Stolkin* court and, like the court in *Matter of Diamond Mortgage Corp.*, 77 B.R. 597 (Bankr. E.D.Mich.1987), adopts the rule enunciated in *Matter of Arkansas Co. Inc.*, 798 F.2d 645 and *Matter of Triangle Chemicals, Inc.*, 697 F.2d 1280, which limits retroactive approval of employment to cases in which prior approval would have been appropriate and extraordinary circumstances are present. Such a rule recognizes the equitable powers of the court on one hand and the clear directive of the Bankruptcy Code and Bankruptcy Rules on the other. *Matter of Diamond Mortgage Corp.*, 77 B.R. at 601. In exercising the Court's discretion to excuse the professional's failure to have sought prior approval, the Court will consider factors such as "whether the applicant or some other person bore responsibility for applying for approval, whether the applicant was under time pressure to begin service without approval, the amount of delay after the applicant learned that initial approval had not been granted, the extent to which compensation to the applicant will prejudice innocent third parties; and other relevant factors." *Matter of Arkansas Co., Inc.*, 798 F.2d at 649.

*Is a Retroactive Order Justified?*

The trustee has not objected to the quality of work or the amount of fees requested by Hopkins & Sutter. As the statement for fees indicates, 708.25 hours were billed at the firm's regular hourly rates and the attorney's fees average $96.00 per hour. The total bill for fees is $67,976.25 and total expenses were $1,277.42. The trustee's objection to the allowance of the administrative claim is on the ground that no order was entered authorizing the employment of Hopkins & Sutter.

Hopkins & Sutter has a very capable bankruptcy department, but the firm's bankruptcy attorneys were not consulted about obtaining court approval for the firm's continued employment. Mr. Wm. Carlisle Herbert, one of the attorneys handling the appeal, testified that he was aware of court orders authorizing employment of attorneys in bankruptcy cases because he had represented a defendant who had been sued by a debtor and saw the debtor's litigation counsel present an application for an order authorizing his employment as attorney for the debtor. Mr. Herbert testified that he raised the issue of authority with lead appellate counsel who suggested that he call the Banhalmis' bankruptcy attorney. Mr. Herbert testified that he was advised by bankruptcy counsel that an order appointing the firm would not be necessary. He further testified that he

relayed this answer to lead appellate counsel, who was satisfied with the answer.

The Affidavit submitted by Vera Nemeth's attorney, Mr. Robert T. Palmer, states that he specifically told Mr. Herbert that he would "aggressively oppose their involvement in this matter and that they (Hopkins & Sutter) should, therefore, make sure they took appropriate steps to protect their interests." At the hearing, Mr. Palmer testified that he thought his remarks were absolutely clear, but that he could not recall whether he specifically mentioned the necessity of obtaining an order authorizing Hopkins & Sutter's employment. Palmer testified that he assumed Hopkins & Sutter had an arrangement to be paid from the Banhalmis rather than the estate because the law firm did not file an application for employment after he told Mr. Herbert that they should take steps to protect themselves.

■ The equitable considerations which often weigh in favor of entering a retroactive order approving the employment of attorneys are not present in this case. The Debtors filed this case as a means of stalling the enforcement of the Nemeth judgment and have admitted this through their attorney at the first meeting of creditors. The Banhalmis had very few creditors. Excluding the Nemeth judgment, the Debtors' assets exceeded their liabilities by $149,071.00. Hopkins & Sutter has stated on page eleven of its Memorandum of Hopkins & Sutter in Response to Objections to its Proof of Administrative Claim that "Vera Nemeth is by far the largest single creditor of the estate, and stands to benefit directly from the disallowance of any administrative claims." The trustee testified that the other claims filed in the case total less than $10,000.00. Thus, although Vera Nemeth stands to benefit from the disallowance of the claim, she also stands to bear the brunt of the attorneys' fees if Hopkins & Sutter's administrative claim is allowed. As the largest creditor, the allowance of the administrative expense claim would significantly impact on Vera Nemeth's distribution from the estate.

The Banhalmis stayed Vera Nemeth from collecting on the judgment she obtained against them by filing for bankruptcy. With so few creditors and such a small amount of debt, there can be no question that the Banhalmis' intent in appealing the judgment was to benefit themselves rather than the estate. This court has held the debt to Vera Nemeth to be nondischargeable. If the Court now allows the administrative claim of Hopkins & Sutter, the Banhalmi bankruptcy will have been successful not only in delaying Nemeth's collection on her judgment, but also in requiring Nemeth, in effect, to pay the Debtors' attorneys' fees in attempting to defeat her claim. Disallowance of the administrative claim, however, does not prevent Hopkins & Sutter from collecting its attorneys' fees from the Banhalmis.

Unlike the *Stolkin* case, the creditors will not be paid in full in this proceeding. Further, it is not the Debtor who has objected to the noncompliance with § 327 and Fed.R.Bankr.P. 2014, but rather the trustee and a creditor for whom the requirement of prior approval exists. *Stolkin v. Nachman*, 472 F.2d at 226–27. Moreover, Hopkins & Sutter has never filed an application to be employed by the Debtors and has waited until it completed its work before seeking compensation through a motion by the Debtors' attorney to pay the administrative claim.

It is unfortunate that Hopkins & Sutter did not further pursue the issue of obtaining court approval for their employment. This is not the first time, however, that a law firm has performed substantial services without court approval and then sought a retroactive order from this Court. The number of requests for retroactive approval of employment is high.[2]

---

2. Judge Robert E. Woodward describes the situation as follows:

It appears to be a growing trend by courts to circumvent obvious legislative direction in a manner that a football coach might like to adopt. It starts with a lateral pass. Since the lateral is not a straight forward play [the Congressional act], the Court would use the term nunc pro tunc instead of lateral. Such a procedure is all right in football but is im-

Unless courts look to factors beyond the attorneys' control, courts may be influenced by the hardship sustained by professionals who may have extended substantial amounts of time after failing to obtain the requisite court approval. Such an approach would reward laxity by counsel and "subvert the prophylactic purpose underlying the statutory requirement of prior approval." *Matter of Arkansas Co., Inc.,* 798 F.2d at 649. In this case, extraordinary circumstances do not exist to employ Hopkins & Sutter on a retroactive basis. The equities fall in favor of the creditors of this estate. The trustee's objection to the administrative claim is sustained.

THEREFORE, IT IS HEREBY ORDERED that the administrative claim of Hopkins & Sutter is disallowed.

proper in the law and leads to a breakdown of what is intended to be an orderly process. He further observed:

It is almost humorous to see the lengths that attorneys and various courts have used to justify this impropriety. The epitome of the herculean effort used to get around the simple application timely made for employment of professionals in bankruptcy matters is the June, 1984 Bankruptcy Service Current Awareness Alert entitled "Special Report: How to Get Paid for Professional Services Rendered Without Prior Court Approval", which goes on for five plus pages as a manifesto to circumvent the requirement. Such efforts indicate that there must be a subconscious belief that Congress meant what it said in requiring prior approval in bankruptcy matters before attorneys fees would be approved.

*In re Liddell,* 46 B.R. 682, 682–83 (Bankr.E.D. Cal.1985).