In re the GRABILL CORPORATION, Windsor–Hamilton, Ltd., Foxxford Group, Ltd., Camdon Companies, Inc., and the Techna Group, Ltd., Debtors–Appellees,

v.

Daniel M. PELLICCIONI, Francis X. Grossi, Jr., Michael L. Molinaro, and Katten, Muchin & Zavis, Appellants–Former Counsel for Debtors.

Bankruptcy No. 90 C 3451.

United States District Court, N.D. Illinois, E.D.

Dec. 9, 1991.

Order on Motion for Reconsideration Jan. 16, 1992.

Richard Friedman, U.S. Trustee's Office, Chicago, Ill.

Matthew J. Botica, Hopkins & Sutter, Chicago, Ill., for Jay Steiner, Grabill Trustee.

Katten, Muchin & Zavis, Chicago, Ill., for appellants-former counsel for debtors.

## MEMORANDUM OPINION AND ORDER

ALESIA, District Judge.

In this bankruptcy appeal appellants/former counsel for debtors, Daniel M. Pelliccioni, Francis X. Grossi, Jr., and Michael L. Molinaro of Katten, Muchin & Zavis (collectively "appellants") challenge two final orders entered by Judge John H. Squires of the United States Bankruptcy Court for the Northern District of Illinois.[1] In particular, appellants challenge the bankruptcy court's Memorandum Opinion and Order dated April 26, 1990 which denied appellants' Application for Compensation and Reimbursement of Expenses ("Application") and the related discovery order entered on January 30, 1990.

In its April 26, 1990 Opinion, the bankruptcy court denied appellants' Application for reimbursement of $69,108.50 in fees and $9,868.92 in costs incurred in representing the debtor-in-possession, Grabill Corporation, and its four subsidiaries, Windsor–Hamilton, Ltd., Foxxford Group, Ltd., Camdon Companies, Inc., and The Techna Group, Ltd. (collectively "debtors") pursuant to 11 U.S.C. § 330 and Federal Rule of Bankruptcy Procedure 2016. 113 B.R. 966. The specific issue before the bankruptcy court was whether appellants should be paid for services rendered to the debtors-in-possession for the period February 3, 1989 through September 28, 1989 notwithstanding the bankruptcy court's denial of appellants' application for employment as counsel for the debtors on February 8, 1989. The bankruptcy court held that it lacked a statutory basis upon which to award appellants its attorneys' fees because the strict requirements of Section 327 of the Bankruptcy Code were not met. The bankruptcy court reached this conclusion because appellants had a potential conflict of interest stemming from its simultaneous pre-petition representation of the debtors and William Stoecker ("Stoecker"), the debtors' sole equity shareholder.

In this same vein, the bankruptcy court on January 30, 1990 granted appellants' discovery requests in part. Specifically, the bankruptcy court authorized appellants to take the depositions of the Grabill Trustee and two attorneys for the Bank Group. By way of clarification, the bankruptcy court ordered that the depositions be limited to the issue of whether the services performed by appellants in connection with their Application were reasonable and necessary and benefitted the debtors' estate. The bankruptcy court prohibited appellants from inquiring into bankruptcy conflict matters, the circumstances surrounding appellants' disqualification, or the appointment of the Grabill Trustee.

This court affirms the bankruptcy court's rulings in all respects.

## I.  FACTS

On or about January 11, 1989, appellants were retained by the debtors prior to the filing of the involuntary petitions.[2] At all relevant times thereafter, appellants were fully aware that the debtors were in danger of defaulting on their loan obligations to several banks and that bankruptcy proceedings might soon follow. In fact, from January 11, 1989 through January 29, 1989, appellants simultaneously represented both the debtors and Stoecker. Subsequently, Stoecker retained separate counsel.

---

1. We note for the record that appellants have requested oral argument. However, oral argument will not be allowed because it will not significantly aid the court in its decisional process. In our view, the parties have adequately presented their legal arguments in their briefs. See Rule 8012(3) of the Federal Rules of Bankruptcy Procedure.

2. Appellants had received $300,000 from the debtors as a retainer. On or about January 12, 1989, the debtors paid appellants $50,000.00. Thereafter, on January 30, 1989, debtors paid appellants an additional $250,000.

Thereafter, on January 31, 1989, several banks filed involuntary Chapter 7 petitions against the debtors. Almost immediately, certain creditors then moved for the appointment of a trustee. On February 2, 1989, the district court appointed Jay Steinberg as interim trustee with limited powers to preserve the assets of the estates. In addition, the bankruptcy court granted debtors' motion pursuant to 11 U.S.C. § 706(a), to convert the cases under Chapter 7 to cases under Chapter 11 of the Bankruptcy Code. Consensual orders for relief under Chapter 11 were entered by the bankruptcy court on February 3, 1989.[3]

On February 8, 1989, appellants filed their application with the bankruptcy court to be employed as attorneys for the debtors-in-possession. Appellants' affidavit, filed pursuant to Federal Rule of Bankruptcy Procedure 2014(a), disclosed their prior simultaneous representation of the debtors and Stoecker for the 18 days immediately preceding the filing of the involuntary bankruptcy petitions. The United States Trustee and representatives of the eight banks which were the debtors' largest creditors (collectively the "Bank Group") objected to appellants' employment on the grounds that the period of simultaneous representation posed a conflict of interest. In support of its position, the United States Trustee argued that appellants were not "disinterested" as defined in Section 101(13) of the Bankruptcy Code, 11 U.S.C. § 101(13). Furthermore, the United States Trustee argued that appellants were not eligible for employment under Section 327, of the Bankruptcy Code. 11 U.S.C. § 327. The bankruptcy court sustained the objections and denied appellants' application for employment on Febru-

ary 8, 1989. Appellants never appealed this ruling of the bankruptcy court.

However, notwithstanding the bankruptcy court's order of February 8, 1989, appellants did continue to provide legal services to the debtors for a seven month period from February 3, 1989 through September 28, 1989. The legal services performed by appellants included, among other things, assisting the debtors in obtaining new counsel; opposing the appointment of the Grabill Trustee; and responding to inquiries and discovery requests propounded by the Grabill Trustee.

Even though appellants continued to perform legal services for seven months, it was not until October 9, 1989, that they finally filed an Application which sought legal fees in the amount of $69,108.50, and expenses in the amount of $9,868.92. Quite surprisingly, appellants spent 523.60 hours working on this matter in spite of the bankruptcy court's order denying employment. Objections to the Application were filed by the United States Trustee, the Grabill Trustee, the Stoecker Trustees, the banks and certain creditors of the Stoecker estate.[4]

On March 27, 1990, the bankruptcy court held an evidentiary hearing on the Application. At that time, the bankruptcy court took the matter under advisement. Thereafter, in its Memorandum Opinion and Order of April 26, 1990, the bankruptcy court stated that absent an order authorizing appellants' employment under Section 327, there was no statutory basis upon which to compensate appellants under Section 330. The bankruptcy court determined that Section 330 of the Bankruptcy Code permits the bankruptcy court to award a profes-

**3.** We note for the record that during this time, appellants charged $115,012.60 for services rendered against the debtors' retainer. As a result, the remaining retainer was reduced to $184,987.40. ($300,000.00 − $115,012.60 = $184,987.40). The $115,012.60 billed by appellants and paid by the debtors is not at issue in this appeal.

**4.** Objections to the Application were filed by the following parties: Jay Steinberg, the Chapter 11 Trustee of the Debtors ("Grabill Trustee"); Thomas E. Raleigh ("Raleigh"), the Trustee of

the related bankruptcy case of William J. Stoecker ("Stoecker"); The Connecticut Bank & Trust Company N.A., Bank of New England Corporation, National Bank of Detroit, Indiana National Bank, Exchange National Bank, Manufacturers National Bank of Detroit, CitiBank, N.A., Australia and New Zealand Banking Group, Ltd., Harris Trust and Savings Bank, LaSalle National Bank, and the Bank of Bellwood (collectively "the Banks"); and M. Scott Michel, the United States Trustee for the Northern District of Illinois (the "U.S. Trustee").

sional person employed under Section 327 or Section 1103 reasonable compensation for actual, necessary services. However, because appellants were never employed under Section 327, the bankruptcy court held that Section 330 was unavailable.[5]

Moreover, the bankruptcy court held that because appellants had a conflict of interest due to their simultaneous representation of the debtors and Stoecker, appellants could not be employed under Section 327. The bankruptcy court expressly stated that its decision was "not easy or gratifying." However, in the opinion of the bankruptcy court, the Bankruptcy Code mandated such a result. Subsequently, on May 7, 1990, the bankruptcy court denied appellants' emergency motion to stay its Order of April 26, 1990.[6]

After objections were filed to appellants' Application, appellants then sought leave to take the depositions of the Grabill Trustee as well as two attorneys for the Bank Group. Moreover, appellants requested the production of certain documents which related to the following issues: the motives of the Grabill Trustee and certain of the banks in objecting to appellants' retention as debtors' counsel; any similar conflicts involving other counsel; and the necessity and benefit of services rendered by appellants to the debtors' estate. Thereafter, the Grabill Trustee moved for a protective order and certain members of the Bank Group moved to quash the subpoenas.

The bankruptcy court entertained oral argument on January 11, 1990. Subsequently, on January 30, 1990, the bankruptcy court granted the motions of the Grabill Trustee and the Bank Group in part. However, the bankruptcy court did grant appellants leave to take discovery limited to the issues of whether the services rendered by appellants were necessary and provided a benefit to the debtors' estates and whether charges for such services were reasonable. The bankruptcy court denied the remainder of appellants' requests as not relevant. Appellants did not proceed with any discovery.

Appellants filed their timely Notice of Appeal on May 7, 1990. Against this background, we address the legal issues raised by this appeal.

## II. DISCUSSION

### A. The April 26, 1990 Decision of the Bankruptcy Court Denying Appellants' Application

■ The first issue before this court is whether the bankruptcy court erred as a matter of law in denying fees and expenses to debtors' former counsel where the attorneys' employment had been denied under Section 327(a) of the Bankruptcy Code. Our standard of review is de novo. See Calder v. Camp Grove State Bank, 892 F.2d 629, 631 (7th Cir.1990) ("It is true that reviewing courts must accept a bankruptcy court's factual findings unless they are clearly erroneous. A bankruptcy court's conclusions of law, however, are subject to de novo review.")

We conclude that appellants continued to perform legal services at their own peril after February 3, 1989, in light of the bankruptcy court's order denying employment. In our view, appellants are not entitled to their fees and disbursements for expenses incurred after that date. Therefore, the bankruptcy court properly denied appellants' Application in its entirety.

■ As a general rule, an attorney for a debtor-in-possession or a trustee will not be compensated out of the bankruptcy estate unless the attorney has been employed pursuant to an order of the court. In re Banhalmi, 84 B.R. 123, 125 (Bankr.N.D.Ill. 1988); In re Massetti, 60 B.R. 756, 759 (Bankr.E.D.Pa.1986); In re Willamette Timber Systems, Inc., 54 B.R. 485, 489

---

5. Section 1103 of the Bankruptcy Code is not applicable to this appeal.

6. On or about May 17, 1989, pursuant to the request of the Grabill Trustee, appellants transferred $100,000.00 of the remaining retainer to the Trustee. ($184,987.40 − $100,000.00 = $84,987.40). Subsequently, the bankruptcy court in its Memorandum Opinion ordered appellants to disgorge and turn over to the Trustee, with accrued interest, the sum of $84,987.40.

(Bankr.D.Or.1985); 2 *Collier on Bankruptcy,* ¶ 330.04[2] at 330–15 (15th ed. 1989) ("Only those professionals whose employment is authorized by the court under Section 327 or 1103 may be compensated under Section 330.") [7]

Section 330 provides, in pertinent part, that "... the court may award ... to a professional person employed under section 327 or 1103 of this title ... reasonable compensation for actual, necessary services...." 11 U.S.C. § 330(a)(1). Section 327(a) sets forth the requirements for employment of professional persons by debtors-in-possession. This section requires that the professional person not hold or represent an interest adverse to the estate. In addition, the professional person must be disinterested. 11 U.S.C. § 327(a). Both prongs must be satisfied.

Accordingly, numerous courts have strictly applied this statutory language and have denied compensation to attorneys who performed services during the pendency of a Chapter 11 proceeding without obtaining prior court approval. *In re Triangle Chemicals, Inc.,* 697 F.2d 1280, 1285 (5th Cir.1983) (absent court approved employment, the professional rendering services is deemed a volunteer); *In re Mahoney, Trocki & Assoc., Inc.,* 54 B.R. 823 (Bankr. S.D.Cal.1985) (attorneys provide services on a *pro bono* basis until they obtain an order of employment from the court); *In re Yeisley,* 64 B.R. 360 (Bankr.S.D.Tex.1986) (without an order of employment, person rendering services is considered a volunteer). *See also In re Futuronics Corp.,* 655 F.2d 463 (2d Cir.1981), *cert. denied,* 455 U.S. 941, 102 S.Ct. 1435, 71 L.Ed.2d 653 (1982); *In re Morton Shoe Cos.,* 22 B.R. 449 (Bankr.D.Mass.1982); *In re Byman Furniture & Interiors, Inc.,* 14 B.R. 230 (Bankr.S.D.Tex.1981).

Strict adherence to the requirements of Section 327 and Federal Rule of Bankruptcy Procedure 2014(a) serves several purposes. The primary justification is the protection of creditors. *In re Peoples Sav. Corp.,* 114 B.R. 151 (Bankr.N.D.Ill.1990) (citing *In re Nana Daly's Pub,* 67 B.R. 782,

786 (Bankr.E.D.N.Y.1986)); *In re Yeisley,* 64 B.R. 360, 362 (Bankr.S.D.Tex.1986).

Nevertheless, several courts have recognized the strictness of these rules and have exercised their inherent equitable powers to grant compensation notwithstanding counsel's failure to obtain the requisite order of employment. For example, some courts have ameliorated the harsh effects of Federal Rule of Bankruptcy Procedure 2014(a) by entering *nunc pro tunc* orders or retroactive employment orders to award compensation to professionals who were not retained with prior court approval. *See, e.g., In re Georgetown of Kettering, Ltd.,* 750 F.2d 536 (6th Cir.1984); *In re Vlachos,* 61 B.R. 473 (Bankr.S.D.Ohio 1986). Thus, these cases make clear that a court has some flexibility when faced with counsel's application for compensation even where counsel has failed to receive an order of employment.

However, in our opinion, the present case is unique from those in which relief has been afforded. In the present case, appellants seek to be compensated after an order of employment was denied by the bankruptcy court. In those cases where the courts have deemed it appropriate to carve out an equitable exception to the bankruptcy code and rules, counsel had inadvertently failed to petition the court for an order of employment.

Appellants have not cited a single case in which counsel has been compensated from the debtors' estate after having been denied an order of employment. In fact, we wholly agree with the view expressed by the bankruptcy court that to allow appellants' Application "would undermine the Order denying KMZ's employment and render it a virtual nullity...." *In re Grabill Corp.,* 113 B.R. 966, 972 (Bankr.N.D.Ill. 1990). No court has been willing to extend equitable principles this far, and this court also declines to do so.

Appellants argue that "it would have bordered on the unethical to refuse assistance because of the risk of being denied compensation." (Appellant's Reply Brief, page 4). While an admirable position, appellants alone are responsible for their pre-

---

**7.** A debtor-in-possession may only hire counsel in accordance with Section 327. *2 Collier on Bankruptcy,* ¶ 327–05 at 327–32. Section 1107(a) places a debtor-in-possession in the same shoes as a trustee, and Section 327 governs the trustee's ability to retain professional persons.

dicament. Appellants could have avoided this dilemma by requesting that the bankruptcy court clarify its order denying employment. A more prudent course for appellants to follow would have been to present their concerns to the bankruptcy court to ascertain its view on whether appellants should proceed on a limited basis or, entirely cease work on all matters related to the debtors' estate. Appellants wholly failed to do so. Instead, appellants continued to work on this matter from February 8, 1989 to September 28, 1989, at a cost of $69,108.50 in attorneys' fees and $9,868.92 in expenses. Appellants were fully aware of the bankruptcy court's position on this issue. Unfortunately for appellants, they proceeded at their own peril.

We now briefly address the second requirement of Section 327. Not only does Section 327 require court approval before counsel may be employed, but Section 327 also requires that the professional person be a disinterested person as defined in the Bankruptcy Code. 11 U.S.C. § 101(13)(E). Section 101(13) defines a disinterested person as one who "does not have an interest materially adverse to the interest of the estate ... by reason of any direct or indirect relationship to, connection with, or interest in, the debtor ... or for any other reason...." 11 U.S.C. § 101(13)(E).[8]

While the bankruptcy court recognized that a split of authority exists regarding whether courts should draw distinctions between potential and actual conflicts of interest to determine whether counsel should be precluded from representing a debtor-in-possession, the bankruptcy court chose to follow the reasoning articulated in *In re Kendavis Indus. Int'l, Inc.*, 91 B.R. 742 (Bankr.N.D.Tex.1988). The court in *Kendavis* held that any conflict either actual or potential, was sufficient to preclude employment under Section 327.

Having already decided that appellants cannot satisfy the first prong of Section 327, we will briefly address this second issue. As an initial matter, we find that the bankruptcy court persuasively distinguished *In re Jartran, Inc.*, 78 B.R. 524 (Bankr.N.D.Ill.1987), in its Memorandum Opinion and Order of April, 1990. In *Jartran* the bankruptcy court allowed a law firm to represent both the debtor-in-possession and its sole shareholder. However, *Jartran* is factually distinguishable from the instant case. First, the record reveals that no "Chinese Wall" was erected at Katten, Muchin & Zavis to protect client confidences and to screen out any conflict. Second, unlike *Jartran*, no independent examiner was appointed by the bankruptcy court to "screen out" any conflicts. Finally, the bankruptcy court determined that an actual conflict existed after timely objections were filed to appellants' Application in compliance with Section 327(c). 11 U.S.C. § 327(c).[9]

In sum, we find that the bankruptcy court's denial of appellants' Application for an allowance of $69,108.50 in compensation and $9,868.92 in expenses was proper. We hereby affirm the bankruptcy court's decision of April 26, 1990.

### B. *The Bankruptcy Court's January 30, 1990 Discovery Order*

■ The second issue before this court is whether the appellants were entitled to discovery on the issues of: (1) similar potential conflicts of interest faced by certain attorneys in this action with respect to *any* bankruptcy litigation; and (2) the motivation of the Grabill Trustee and the Bank Groups in objecting to appellants retention as debtors' counsel. Our standard of review for the discovery order is whether the bankruptcy court abused its discretion. *Todd v. Merrell Dow Pharmaceuticals, Inc.*, 942 F.2d 1173, 1178 (7th Cir.1991). "An abuse of discretion is established only where no reasonable man could agree with the district court; if reasonable men could

---

**8.** Where an attorney has represented a shareholder, he is not disinterested under Section 101(13) with respect to the debtor-in-possession. *See, e.g., In re Philadelphia Athletic Club, Inc.*, 20 B.R. 328 (E.D.Pa.1982).

**9.** *See In re Grabill Corp.*, 113 B.R. at 974 ("The actual conflict was found to exist by the Court

in this case after timely and immediately objections were made upon the filing of KMZ's application in accordance with the provision of section 327(c)"). Therefore, we disagree with appellants' unfounded accusations at page 1 of their reply brief.

differ as to the propriety of the court's action, no abuse of discretion has been shown." *Washington v. Sherwin Real Estate, Inc.*, 694 F.2d 1081, 1087 (7th Cir. 1982), *quoting Smith v. Widman Trucking & Excavating*, 627 F.2d 792, 795–96 (7th Cir.1980). Under the circumstances of this case, appellants have shown no error of judgment here.

Appellants argue that they were entitled to discovery on issues directly raised by the Bank Group and the Grabill Trustee in their objections to appellants' Application. The gist of appellants' argument is as follows. Because the appellees raised the issue of disqualification to defeat appellants' request for compensation, appellants are entitled to respond to these objections. According to appellants, the only way to do so is through discovery. The bankruptcy court agreed to a limited extent.

After entertaining oral argument, the bankruptcy court gave appellants limited discovery of material relevant to its Application, *i.e.*, the reasonableness of the services rendered by appellants. Surprisingly, appellants wholly failed to take any discovery. Instead, appellants now appeal the bankruptcy court's January 30, 1990 Order in its entirety. We reject appellants' appeal for several reasons.

First, appellants requested documents and sought discovery on matters which relate to litigation outside the instant proceeding. In other words, appellants sought discovery on any potential conflict experienced by certain lawyers in any bankruptcy proceeding. We agree with the bankruptcy court that this "request" was overly broad and not relevant.

■ Second, even if the "potential conflicts" were limited to those faced by counsel in the instant proceedings, our decision would not change. In our view, appellants' appeal on this point is merely an "end-run" around the bankruptcy court's order disqualifying appellants—an order which they never appealed. This court does not ap-

prove of appellants' thinly veiled collateral attack on the bankruptcy court's final determination.

Equally important, we have reviewed the testimony from the January 11, 1990 hearing before the bankruptcy court and the attendant order. Viewing the bankruptcy court's Order of January 30, 1990 objectively, we decline to hold that the bankruptcy court abused its discretion.

## CONCLUSION

The court affirms the bankruptcy court's decision dated April 26, 1990 denying appellants' Application for Compensation and Reimbursement of Expenses. In addition, the court affirms the bankruptcy court's decision of January 30, 1990, limiting discovery.

## ORDER ON MOTION FOR RECONSIDERATION

Currently before the court is the motion of appellants-former counsel for debtors, Daniel M. Pelliccioni, Francis X. Grossi, Jr., Michael L. Molinaro and Katten, Muchin & Zavis (collectively "appellants"), for reconsideration or in the alternative to correct opinion and order because of a mistake under Rule 60(b) or to amend judgment pursuant to Rule 59(e) ("the motion to reconsider"). As an initial matter, the United States Trustee argues that because appellants filed a notice of appeal, this court is divested of jurisdiction to determine the motion to reconsider. We do not agree.

■ In a Memorandum Opinion and Order dated December 2, 1991, this court affirmed the bankruptcy court's decision dated April 26, 1990, denying appellants' Application for Compensation and Reimbursement of Expenses ("Application"). In this same memorandum opinion, the court affirmed the bankruptcy court's decision of January 30, 1990, limiting discovery. On December 9, 1991, judgment was entered by the clerk of the court and copies of the memorandum opinion and judgment mailed

to all counsel of record.[1] Thereafter, on December 18, 1991, appellants filed a timely motion to reconsider in chambers. The motion to reconsider was noticed up for a hearing on January 7, 1992.[2] In the interim, appellants filed their notice of appeal on December 31, 1991.

It is well settled that appellants subsequently filed notice of appeal is a "nullity" when a timely motion for reconsideration is pending. *See* Rule 4(a)(4) of the Federal Rules of Appellate Procedure; *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 60–61, 103 S.Ct. 400, 403–404, 74 L.Ed.2d 225 (1982). By the same token, under Rule 8015 of the Federal Rules of Bankruptcy Procedure the notice of appeal was prematurely filed. *See Matter of X–Cel, Inc.*, 823 F.2d 192 (7th Cir.1987). Accordingly, we have jurisdiction to decide the motion to reconsider. We now do so.

■ In their motion, appellants seek to be paid for services rendered to the debtors-in-possession for the period February 3, 1989 through February 8, 1989 for fees in the amount of $47,997.00 and expenses in the amount of $6,809.00. Appellants argue that they are entitled to reimbursement in the amount of $54,806 for expenses incurred in the six days prior to the bankruptcy court's denial of their application for employment as attorneys for the debtors-in-possession on February 8, 1989. Appellants wholly failed to cite any legal authority in support of their position.

Appellants contend that this court made a mistake in disallowing fees for this six day period because "the Court appears to have predicated its decision on the assumption that appellants performed substantial legal services after and notwithstanding the order of the Bankruptcy Court denying appellants application for employment as counsel for the debtor." (Motion to Reconsider, p. 2). In his well-reasoned Memorandum Opinion and Order dated April 26, 1990, Judge John H. Squires denied appellants' Application for $69,108.50 in compensation and $9,868.92 in expenses *for the period February 3, 1989 through September*

*ber 28, 1989.* The bankruptcy court held that it lacked a statutory basis upon which to award appellants their attorneys' fees because the strict requirements of Section 327 of the Bankruptcy Code were not met and there was no statutory basis upon which to compensate appellants under Section 330 of the Bankruptcy Code. The bankruptcy court reached this conclusion because appellants had a potential conflict of interest stemming from their simultaneous pre-petition representation of the debtors and William Stoecker, the debtors' sole equity shareholder. As a result, the bankruptcy court disallowed all compensation for the period February 3, 1989 through September 28, 1989. This court in its memorandum opinion of December 2, 1991, affirmed the bankruptcy court and denied all fees for the period covered by the Application. Appellants have failed to offer any contrary legal authority. Appellants' motion to reconsider is denied.

---

1. A review of the document sheet does not disclose any explanation for the one week delay in entering judgment.

2. Our review of the official court file and docket sheet reveals that appellants' motion to reconsider was file stamped January 7, 1992. In order to resolve any potential confusion, the applicable filing date was December 18, 1991. *See* Local Rule 12(d).