In re **LEFKAS GENERAL PARTNERS No. 1017, Lefkas General Partners No. 1018, Lefkas General Partners No. 1020, Debtors.**

Douglas **GOWAN, Appellant,**

v.

**LEFKAS GENERAL PARTNERS No. 1017, Lefkas General Partners No. 1018, Lefkas General Partners No. 1020, Glenn R. Heyman, Examiner with Expanded Powers; The Sakura Bank, Limited, Appellees.**

No. 92 C 6503.

United States District Court, N.D. Illinois, E.D.

April 15, 1993.

Douglas Gowan, Milwaukee, WI.

Norman B. Newman, Much, Shelist, Freed, Denenberg, Ament & Eiger, P.C., John Collen, Sonnenschein, Nath & Rosenthal, Chicago, IL.

### MEMORANDUM OPINION AND ORDER

ZAGEL, District Judge.

■ This matter is before the Court, pursuant to 28 U.S.C. § 158(a), on appeal from a final order of the United States Bankruptcy Court denying appellant Gowan's application for fees or compensation for services rendered in the consolidated Chapter 11 cases of three Illinois limited partnerships known as Lefkas General Partners Nos. 1017, 1018, and 1020 ("Debtors"). A bankruptcy court's ruling regarding fees will not be disturbed on appeal absent an abuse of discretion. *In re Land*, 943 F.2d 1265, 1266 (10th Cir.1991) (reviewing bankruptcy court's denial of motion for *nunc pro tunc* approval of an application for employment of attorney). This Court also must accept the bankruptcy court's factual findings unless clearly erroneous, but review *de novo* any legal determinations. *Id.; First Wis. Nat'l Bank v. Federal Land Bank*, 849 F.2d 284, 287 (7th Cir. 1988); Fed.R.Bankr. 8013. For the reasons stated below, this Court finds that Judge Ginsberg did not abuse his discretion in denying Gowan's fee application. This Court, therefore, affirms the bankruptcy court's decision.

### FACTUAL BACKGROUND

The Debtors' general partners are members of the Demetrios Dellaportas family. The Debtors' principal asset is their beneficial interests in land trusts, which hold title to the Rivercrest Shopping Center. On October 4, 1991, the Debtors filed Chapter 11

petitions for reorganization. About a month later, Sakura Bank, Ltd. (f/k/a The Mitsui Taiyo Kobe Bank, Ltd.) filed a motion to appoint a trustee to administer the Debtors' estates. The Sakura Bank is the Debtors' major creditor (over 90% of the estates' debt) and holds the first mortgage on the Rivercrest Shopping Center. According to the Sakura Bank, a trustee was necessary because the Debtors incompetently and fraudulently diverted funds from Rivercrest, preventing them from duly investigating these fraudulent transactions and properly administering the estates.

After the Sakura Bank filed its motion, the Debtors filed an application for authority to employ the Capital Group, Inc. as a financial consultant and to pay the company a $15,000 retainer. Appellant Gowan is the President of the Capital Group. On January 21, 1992, Judge Ginsberg continued this application until resolution of the Sakura Bank's motion for appointment of a trustee, stating that appointment of new management for the Debtors was premature in light of the Sakura Bank's pending motion.

Hearings on the motion for appointment of a trustee began on that same day, January 21, 1992, after a preliminary investigation by an examiner verified the Sakura Bank's allegations of fraud. Twenty-five days of hearings followed. Finally, on April 30, 1992, the Sakura Bank and the Debtors agreed to the appointment of Glenn R. Heyman, as a special Examiner with Expanded Powers.[1] Since now the special examiner was entitled to select the financial advisors, the bankruptcy court denied as moot the Debtors' application for employment of the Capital Group without prejudicing any rights Gowan "may have [] for compensation."

On July 31, 1992, Gowan filed an application for $111,997.51 in fees. The fee application revealed that Gowan had received $85,000 from the Debtors' individual partners (the Dellaportas family), of which $50,000 was attributed to services rendered on the Rivercrest Chapter 11 cases. The

---

1. Heyman's appointment became effective on May 11, 1992.

balance due was $51,997.51. On August 17, 1992, Judge Ginsberg denied Gowan's fee application with the parties present in court. Relying on a page of definitions submitted by Gowan to the court, Judge Ginsberg determined that Gowan could not collect from the Debtors' estates because the definitions constituted a judicial admission that Gowan's clients were members of the Dellaportas family, not the Debtors. Gowan defined his clients as the "Dellaportas family partners and guarantors in Lefkas 1017, 1018, and 1020 [and g]eneral partner originally Demetrios Dellaportas, then Maria Dellaportas." Gowan's loyalties while participating in the bankruptcy proceedings were with his clients. These clients were not the Debtors—the Debtors were the limited partnerships of Lefkas General Partners Nos. 1017, 1018, and 1020.

### ENTITLEMENT TO COMPENSATION OR FEES

██ The issue before this Court is whether Judge Ginsberg erred in denying Gowan's fee application based on the page of definitions submitted to the court for clarification of the parties involved and their status with respect to the bankruptcy proceedings. Gowan essentially contends that the definitions submitted in response to the judge's request for clarification are not part of the fee application and cannot constitute judicial admissions. Judicial admissions, however, are not limited to statements made in the particular motion or application pending. Any "deliberate, clear and unequivocal" statement, either written or oral, made in the course of judicial proceedings qualifies as a judicial admission. *Ensign v. Pennsylvania*, 227 U.S. 592, 33 S.Ct. 321, 57 L.Ed. 658 (1913); *In re Corland Corp.*, 967 F.2d 1069, 1074 (5th Cir. 1992) (denial of request for admission No. 11 combined with other evidence adduced at trial rendered admission in request for admission No. 9 inconclusive and not binding as a judicial admission); *Wheeler v. John Deere Co.*, 935 F.2d 1090, 1097–99 (10th Cir.1991) (affirmative, formal, factual statements contained in stipulation agreement entered into prior to first trial consti-

tuted judicial admissions binding on the party at the second trial where no manifest injustice resulted and party only complained of tactical disadvantage); *United States v. Cravero*, 530 F.2d 666 (5th Cir. 1976) (defense counsel's statements made at the bench constituted judicial admissions).

██ Gowan deliberately prepared and submitted his written statement during the pendency of the bankruptcy proceedings specifically to clarify any confusion as to the parties for whom Gowan performed services. Gowan knew that Judge Ginsberg would consider this statement in determining his right to compensation from the Debtors' estate. The statement unequivocally defined his clients as the Dellaportas family and partners of the limited partnerships; it did not name the Debtors as individual clients. Under these circumstances, this Court finds that Judge Ginsberg did not err in holding that the written definitions were sufficiently "deliberate, clear and unequivocal" to constitute a judicial admission that the Debtors were not Gowan's clients.

██ Even absent the admission, this Court finds that Judge Ginsberg did not abuse his discretion in denying Gowan's application for compensation and fees under the facts presented in the record. In order to recover fees from a debtor's estate as an administrative cost, a professional such as Gowan must obtain the bankruptcy court's approval of his employment. 11 U.S.C. § 327 (1991). Although the Debtors applied for approval for employment of the Capital Group, final approval never manifested and Judge Ginsberg eventually denied the application as moot. Absent court approval, Gowan is not entitled to compensation from the Debtors' estates. *In re Banhalmi*, 84 B.R. 123 (Bankr.N.D.Ill. 1988) (law firm who failed to obtain court approval of employment by debtor was properly denied compensation for services rendered in Chapter 11 proceedings under both a strict and liberal reading of § 327 requirements).

██ Unfortunately for Gowan, Judge Ginsberg did not rule on the application for employment until after Gowan, on behalf of the Capital Group, had already rendered substantial financial services in the Rivercrest Chapter 11 cases. Gowan now contends that equity mandates recovery of compensation for those services rendered on behalf of the Debtor with Judge Ginsberg's knowledge. Some courts adhere to a liberal interpretation of the requirements in § 327 and will enter retroactive approval of employment and compensation where the professional failed to obtain approval due to inadvertence or neglect. *Id.* at 126, 127. The Seventh Circuit is one of those courts which has held that under proper circumstances, the "equitable aspects of bankruptcy proceedings permit the court to retroactively approve the employment" of professionals who rendered services for a debtor even absent strict compliance with § 327. *Id.; Stolkin v. Nachman,* 472 F.2d 222 (7th Cir.1973) (lower court did not abuse its discretion in approving retroactively employment of debtor's attorney and awarding appropriate fees out of the debtor's estate). The proper circumstances for retroactive approval, however, are signaled by extraordinary facts in which prior approval would have been appropriate. *Banhalmi,* 84 B.R. at 127. As Judge Ginsberg pointed out on January 21, 1992, prior approval of Gowan's employment on behalf of the Debtors was not appropriate in light of the Sakura Bank's pending motion for appointment of a trustee with expanded powers, who upon appointment would be responsible for selecting financial advisors.

██ Even considering the equitable factors pertinent under a liberal reading of § 327, this Court finds that the bankruptcy judge did not abuse his discretion in not excusing prior approval.[2] Gowan does not suggest that he was pressured into giving financial advice without court approval. The Dellaportas family advanced Gowan

$85,000 in fees. Knowing that Judge Ginsberg had continued the application for approval, Gowan voluntarily performed the requested tasks—most likely under the expectation that the Dellaportas family would finance any remaining expenses or fees. In fact, in a letter sent to Mr. Norman Newman on July 15, 1992, regarding further payments, Gowan acknowledged the possibility that the bankruptcy court may deny his claim for fees from the Debtors' estates and that he may have no other recourse than to seek compensation under the "primary obligation entered into by Mr. Demetrios Dellaportas and members of his family, and by the two entities which issued [him] checks." Furthermore, retroactive approval would significantly prejudice the Sakura Bank, the Debtors' primary creditor, by requiring the bank ultimately to bear the expenses for financial advice in securing the appointment of a trustee with expanded powers, an appointment made necessary by the Debtors' partners' fraudulent activities. Denial of Gowan's fee application, therefore, was not an abuse of discretion where it was aimed at protecting creditors consistent with the intended purpose of the rules and procedures governing the employment of professionals under § 327. *Id.* at 127.

██ Judge Ginsberg's decision is also justified under the statute's requirement that the professionals employed be disinterested. 11 U.S.C. § 327(a) (1991). The Supreme Court in *Woods v. City Nat'l Bank & Trust Co.,* 312 U.S. 262, 61 S.Ct. 493, 85 L.Ed. 820 (1941), held that a bankruptcy court can properly disallow claims for fees when the claimant "serv[es] more than one master or [is] subject to conflicting interests." *Id.* at 268, 61 S.Ct. at 497. Clearly, while the interests of the Dellaportas family as the partners of the Debtors (the limited partnerships of Lefkas General Partners Nos. 1017, 1018, and 1020) to some extent coincide with the interests of the limited

---

**2.** Such equitable factors include:
whether the applicant or some other person bore responsibility for applying for approval, whether the applicant was under time pressure to begin service without approval, the amount of delay after the applicant learned that initial approval had not been granted, the extent to which compensation to the applicant will prejudice innocent third parties; and other relevant factors.
*In re Arkansas Co., Inc.,* 798 F.2d 645, 649 (3d Cir.1986); *Banhalmi,* 84 B.R. at 127.

partnerships, they also may conflict. When a claimant renders advice to a partner while allegedly also serving the partnership, he may be torn by divided loyalties. Under § 328(c), a court may deny compensation where the "professional person is not a disinterested person, or represents or holds an interest adverse to the interest of the estate with respect to the matter on which such professional person is employed." 11 U.S.C. § 328(c) (1991); *see In re 765 Assocs.*, 14 B.R. 449 (Bankr. D.Haw.1981) (attorney who received compensation from a corporation controlled by a general partner of the debtor was not entitled to compensation from debtor's estate because he served dual or conflicting interests and was not disinterested). Judge Ginsberg, therefore, did not abuse his discretion in denying Gowan's fee application and finding that Gowan was not sufficiently disinterested under § 327 because his loyalties to the Dellaportas family as partners of the limited partnerships prevented him from also acting in the best interest of the Debtor, the limited partnerships.

In short, after reviewing all the evidence, this Court finds that Judge Ginsberg did not abuse his discretion in denying Gowan's fee application based not only on his judicial admission, but on the fact that his loyalties were divided between at least two masters with potentially conflicting interests.[3] Equitable considerations also did not warrant retroactive approval of Gowan's employment. Gowan may seek compensation for past services rendered from the Dellaportas family. The bankruptcy court's decision is affirmed.

### *MOTIONS TO STRIKE AND FOR SANCTIONS*

This Court hereby grants permission for Appellant Gowan to consolidate and include his two motions to strike statements of the issues and designation of the record in his appeal to this district court. Upon consideration of these motions and the record,

this Court denies Gowan's motions to strike.

Additionally, the Sakura Bank's motion to strike all allegations of fraud, conspiracy, and falsification of evidence or of the record from Gowan's motion for sanctions is granted. Finally, Gowan's motion for sanctions is denied.

---

**3.** Gowan assigns a host of other errors to Judge Ginsberg's handling of his fee petition. None of

them have any effect on this Court's outcome.